# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

| | | |
|---|---|---|
| HENRY WATKINS SKINNER, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Civil Action No. 2:09-CV-00281 |
| | ) | |
| LYNN SWITZER, District Attorney | ) | |
| for the 31st Judicial District | ) | |
| of Texas, | ) | |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

**ROBERT C. OWEN**
Texas Bar No. 15371950
Owen & Rountree, L.L.P.
P.O. Box 40428
Austin, Texas 78704
Phone:  (512) 804-2661
Fax:  (512) 804-2685
robowenlaw@gmail.com

**DOUGLAS G. ROBINSON**
D.C. Bar No. 10850
1440 New York Ave., N.W.
Washington, D.C. 20005-2111
Phone:  (202) 371-7800
Fax:  (202) 371-7168
douglas.robinson@skadden.com

**MARIA CRUZ MELENDEZ**
Four Times Square
New York, New York 10036-6522
Phone:  (212) 735-2435
Fax:  (212) 735-2000
maria.cruzmelendez@skadden.com

*Counsel for Plaintiff*

Dated:  January 6, 2010

## TABLE OF CONTENTS

I.      This Court Has Jurisdiction Under 28 U.S.C. §§ 1331 and 1343 ......................................1

II.     The *Rooker-Feldman* Doctrine Does Not Bar Plaintiff's Claims .......................................2

III.    Defendant Fails to Demonstrate that Mr. Skinner's Claim Is Barred by Res
        Judicata ..............................................................................................................................10

IV.     While This Court Is Likely Bound by *Kutzner v. Montgomery County,* That
        Decision Is Entirely Out of Step with Prevailing Law and Ultimately Cannot Be
        Sustained ...........................................................................................................................14

        A.      Any Argument that a § 1983 Claim for DNA Testing Is Barred by *Heck* Is
                No Longer Tenable After *Wilkinson v. Dotson*, 544 U.S. 74 (2005)....................15

        B.      Post-*Dotson* Decisions Consistently Confirm that Requests for DNA
                Evidence May Properly Be Brought Under § 1983. ...........................................17

        C.      The Fifth Circuit Is Alone in Continuing to Insist that § 1983 Claims for
                DNA Testing Are Barred by *Heck.* ..................................................................18

V.      Plaintiff's § 1983 Claim Is Not the Functional Equivalent of a Successive Habeas
        Petition ...............................................................................................................................18

VI.     Defendant Is Not Entitled to Attorney's Fees if the Court Does Not Rule in
        Plaintiff's Favor ................................................................................................................19

CONCLUSION...............................................................................................................................22

TABLE OF AUTHORITIES............................................................................................................ iii

**PLAINTIFF'S RESPONSE TO**
**DEFENDANT'S MOTION TO DISMISS**

# TABLE OF AUTHORITIES

## FEDERAL CASES

*AEP Energy Services Gas Holding Co. v. Bank of America, N.A.*,
No. Civ. H-03-4973, 2004 WL 2278770 (S.D. Tex. Sept. 14, 2004)..............................11

*Akuna Matata Invs., Ltd. v. Texas NOM Limited Partnership*,
No. SA-05-CA-1053-RF, 2006 U.S. Dist. LEXIS 7991 (W.D. Tex. Jan. 13,
2006) .........................................................................................................................4, 6

*Bradley v. Pryor*,
305 F.3d 1287 (11th Cir. 2002) ...............................................................................15

*Breest v. New Hampshire Attorney General*,
472 F. Supp. 2d 116 (D.N.H. 2007)..........................................................................17

*Breest v. Attorney General for New Hampshire*,
No. 06-cv-361-SM, 2008 WL 183240 (D.N.H. Jan. 18, 2008)....................................3

*Coleman v. Terrell*,
No. 07-1827, 2008 WL 1943246 (W.D. La. Mar. 23, 2008) .......................................8

*Daniel v. Ferguson*,
839 F.2d 1124 (5th Cir. 1988) ...................................................................................1

*Dist. Attorney's Office v. Osborne*,
129 S. Ct. 2308 (2009) ...................................................................... 8, 9, 13, 14, 17

*Dist. of Columbia Court of Appeals v. Feldman*,
460 U.S. 462 (1983).................................................................................................2

*Drake v. St. Paul Travelers Insurance Co.*,
No. 09-40431, 2009 WL 4035470 (5th Cir. Nov. 23, 2009).......................................2

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*,
544 U.S. 280 (2005).........................................................................................2, 3, 5

*Hamilton v. Attorney General of Louisiana*,
No. 07-3600, 2008 WL 1836670 (E.D. La. April 23, 2008).......................................8

*Harvey v. Horan*,
278 F.3d 370 (4th Cir. 2002)...................................................................................15

*Harvey v. Horan*,
285 F.3d 298 (4th Cir. 2002) ..................................................................................15

iii

*Heck v. Humphrey*,
    512 U.S. 477 (1994)........................................................................... 14, 15

*Hoblock v. Albany County Board of Elections*,
    422 F.3d 77 (2d Cir. 2005)........................................................... 3, 4, 6, 7

*Hughes v. Rowe*,
    449 U.S. 5 (1980) ............................................................................... 20

*Jones v. Tex. Tech Univ.*,
    656 F.2d 1137 (5th Cir. 1982) ........................................................... 20

*Kutzner v. Montgomery County*,
    303 F.3d 339 (5th Cir. 2002)......................................................... 14, 15

*LAC Real Estate Holdings, L.L.C. v. Biloxi Marsh Lands Corp.*, 320 F. App'x 267,
    269 (5th Cir. 2009) ........................................................................... 2, 7

*McKithen v. Brown*,
    481 F.3d 89 (2d Cir. 2007)...................................................... 4, 5, 6, 8,
                                                               17, 18

*Moore v. Lockyer*,
    No. 04-1952, 2005 WL 2334350 (N.D. Cal. Sept. 23, 2005), *aff'd*, 295 F.
    App'x 176 (9th Cir. 2008) .................................................................... 8

*Nelson v. Campbell*,
    541 U.S. 637 (2004)................................................................ 16, 18, 19

*Ohio Adult Parole Auth. v. Woodard*,
    523 U.S. 272 (1998)........................................................................... 17

*Osborne v. Dist. Attorney's Office*,
    423 F.3d 1050 (9th Cir. 2005), *rev'd on other grounds,* 129 S. Ct. 2308 (2009)
    ........................................................................................................ 17

*Richard v. Hoechst Celanese Chemical Group, Inc.*,
    355 F.3d 345 (5th Cir. 2003)........................................................... 7, 8

*Richards v. Dist. Attorneys' Office*,
    No. 09-10144, 2009 WL 4716025 (5th Cir. Dec. 10, 2009) ............. 14, 18

*Rooker v. Fidelity Trust Co.*,
    263 U.S. 413 (1923)............................................................................. 2

*Rowley v. Wilson*,
    200 F. App'x 274 (5th Cir. 2006) ......................................................... 7

iv

*Savory v. Lyons,*
    469 F.3d 667 (7th Cir. 2006)............................................................17

*Schmueser v. Burkburnett Bank,*
    937 F.2d 1025 (5th Cir. 1991)...................................................... 10, 11

*Scott v. Fortenberry,*
    278 F. App'x 440 (5th Cir. 2008) ...................................................8

*Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.,*
    99 F.3d 746 (5th Cir. 1996).............................................................13

*Stenseth v. Greater Fort Worth & Tarrant County Cmty. Action Agency,*
    673 F.2d 842 (5th Cir. 1982) .........................................................20

*United States v. Sheperd,*
    23 F.3d 923 (5th Cir. 1994)...............................................................7

*United States v. Sheperd,*
    834 F. Supp. 175 (N.D. Tex. 1993), *rev'd,* 23 F.3d 923 (5th Cir. 1994) ....................7

*United States v. Shipp,*
    203 U.S. 563 (1906)................................................................... 1-2

*Vaughner v. Pulito,*
    804 F.2d 873 (5th  Cir. 1986) ...................................................... 19, 20

*Wade v. Brady,*
    460 F. Supp. 2d 226 (D. Mass 2006).................................................17

*White v. So. Park Indep. School Dist.,*
    693 F.2d 1163, 1169 (5th Cir. 1982) .........................................19-20, 20

*Wilkinson v. Dotson,*
    544 U.S. 74 (2005) .................................................................. 15, 16

*Wilkinson v. D.M. Weatherly Company,*
    655 F.2d 47 (5th Cir. 1981) .........................................................19

*York v. Story,*
    324 F.2d 450 (9th Cir. 1963), *cert. denied,* 376 U.S. 939 (1964) ................................1

v

## STATE CASES

*Patrick v. State*,
    86 S.W.3d 592 (Tex. Crim. App. 2002)................................................................12-13

*Sutherland v. Cobern*,
    843 S.W.2d 127 (Tex. App. 1992) ..........................................................................10

## STATUTES

28 U.S.C. § 1915A ......................................................................................................14

28 U.S.C. § 1919 .........................................................................................................19

42 U.S.C. § 1988 .........................................................................................................19

Tex. Code. Crim. Proc. art. 64 .....................................................................................6

Tex. Code Crim. Proc. Ann. art. 64.03(a)(2)(A) (Vernon 2006 & Supp. 2009)...............12

vi

Plaintiff Henry Watkins Skinner respectfully submits this Response to Defendant's Motion to Dismiss.  In support of his Response, Plaintiff asserts the following arguments:

## I.   THIS COURT HAS JURISDICTION UNDER 28 U.S.C. §§ 1331 AND 1343.

Defendant opens her brief by complaining that certain statutes cited in the Complaint as a basis for the Court's jurisdiction are in fact non-jurisdictional.  Defendant ultimately concedes that two of the statutes cited by Plaintiff, 28 U.S.C. §§ 1331 and 1343, do in fact grant original jurisdiction over this action, (*see* Def. Mot. to Dismiss at 3), but she nevertheless insists that "Plaintiff is . . . incorrect to assert that jurisdiction exists under 28 U.S.C. §§ 1331 and 1343" because, "for the reasons discussed below, there is no federal question or cognizable claim under § 1983 in this case."  (*Id.* at 4.)

It has long been established, however, that a federal court has jurisdiction under §§ 1331 and 1343 to hear a case under 42 U.S.C. § 1983 even if there is a question whether the plaintiff has failed to state a claim or his allegations are otherwise inadequate.  *See, e.g.*, *Daniel v. Ferguson*, 839 F.2d 1124, 1127 (5th Cir. 1988) (a distinction must be drawn between a court's jurisdiction under § 1343 to hear a § 1983 claim and the adequacy of that claim); *York v. Story*, 324 F.2d 450, 453 (9th Cir. 1963), *cert. denied*, 376 U.S. 939 (1964) (28 U.S.C. § 1943 "was enough to establish district court jurisdiction [over a § 1983 claim], whether or not appellant succeeded in stating such a claim").  Even if the Court were to find that a *different* subject-matter-jurisdiction defense, such as the *Rooker-Feldman* doctrine, applied here, that still would not be grounds for the Court to hold that it lacks jurisdiction under 28 U.S.C. §§ 1331 and 1343, as this case unquestionably satisfies the requirements of both of those sections.

Defendant's hyper-technical jurisdiction argument is, in any event, entirely hypothetical and beside the point.  In the often cited words of Justice Holmes in *United States v. Shipp*, 203

U.S. 563, 573 (1906), a federal court "necessarily ha[s] jurisdiction to decide whether the case [is] properly before it."  Plainly, then, at a bare minimum, this Court has jurisdiction to consider and resolve the threshold issues raised by Defendant's Motion to Dismiss.

## II.      THE *ROOKER-FELDMAN* DOCTRINE DOES NOT BAR PLAINTIFF'S CLAIMS.

Defendant also argues that this Court lacks subject matter jurisdiction over this case based on the so-called *Rooker-Feldman* doctrine, enunciated by the Supreme Court in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *Dist. of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983).  Defendant, however, reads that doctrine far too broadly.

The *Rooker-Feldman* doctrine provides that federal courts lack jurisdiction to review, modify, or nullify final orders of state courts.  *See LAC Real Estate Holdings, L.L.C. v. Biloxi Marsh Lands Corp.*, 320 F. App'x 267, 269 (5th Cir. 2009).  The Supreme Court has made clear that this jurisdictional bar is extremely narrow in its scope and must be sparingly applied.[1]  *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 282, 284 (2005) (cautioning that the *Rooker-Feldman* doctrine is meant to occupy "narrow ground"); *see also Drake v. St. Paul Travelers Ins. Co.,* No. 09-40431, 2009 WL 4035470, at *3 (5th Cir. Nov. 23, 2009) (holding that *Rooker-Feldman* doctrine did not bar plaintiff's claim because it "d[id] not meet the narrow set of cases governed by *Rooker-Feldman*").  Defendant's argument that this Court should dismiss Plaintiff's § 1983 claim on *Rooker-Feldman* grounds rests on precisely the same

---

[1] In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*, the Supreme Court sought to curb the erroneous application of the doctrine in the lower federal courts, explaining that,

> Variously interpreted in the lower courts, the doctrine has sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738.

544 U.S. 280, 283 (2005).

**PLAINTIFF'S RESPONSE TO**
**DEFENDANT'S MOTION TO DISMISS**

improperly broad reading of those decisions that the Supreme Court and the Fifth Circuit rejected in *Exxon Mobil* and *Drake*, respectively.

The Supreme Court has outlined four requirements that must be met before a court may apply *Rooker-Feldman* to bar a plaintiff's claim in federal district court: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by the state court judgment, (3) the plaintiff must, through his claim, invite district court review and rejection of that judgment; (4) the state-court judgment must have been rendered before the district court action commenced. *See Exxon Mobil*, 544 U.S. at 284 ("The *Rooker-Feldman* doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."). Plaintiff concedes that, in this case, the first and fourth requirements— often referred to as the procedural requirements—have been met, as Mr. Skinner was denied relief by the Texas courts prior to filing this § 1983 lawsuit. But any assertion that this case satisfies the second and third (so-called substantive) requirements is baseless.

Mr. Skinner does not, as required by the second factor under *Exxon Mobil*, complain of injuries *caused* by any state court judgment. "[F]ederal plaintiffs are not subject to the *Rooker-Feldman* bar unless they *complain of an injury* caused by a state judgment." *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 87 (2d Cir. 2005); *see also Breest v. Attorney General for N.H.*, No. 06-cv-361-SM, 2008 WL 183240, at *6 (D.N.H. Jan. 18, 2008) (prisoner's § 1983 action not barred by *Rooker-Feldman* because "the prior state court orders in [plaintiff's] criminal case, denying his request for additional testing under state law, are not the 'cause' of his asserted injury here."). A plaintiff complains of such a state-court injury—particularly where a third-

3

party is involved—only where the third party's actions were *produced* by the state court judgment and "not simply ratified, acquiesced in, or left unpunished by it." *Hoblock*, 422 F.3d at 88. *See also Akuna Matata Invs., Ltd. v. Tex. NOM Ltd. P'ship*, No. SA-05-CA-1053-RF, 2006 U.S. Dist. LEXIS 7991, at *2 (W.D. Tex. Jan. 13, 2006) (explaining that *Rooker-Feldman* applies only when the complaint attacks the state court judgment *itself* as having illegally caused injury to the plaintiff).

Moreover, a party does not complain of an injury caused by a state-court judgment when the exact injury of which the party complains in federal court existed prior to the state-court proceedings, and so could not have been caused by those proceedings. *See McKithen v. Brown*, 481 F.3d 89, 98 (2d Cir. 2007). In *McKithen,* the Second Circuit considered the identical issue presented to this Court in the context of a request for post-conviction DNA testing, and held that the *Rooker-Feldman* doctrine did not apply. *Id.* at 93-94, 98-99. The court reasoned that "a party is not complaining of an injury 'caused by' a state-court judgment when the exact injury of which the party complains in federal court existed *prior* . . . to the state court proceedings, and so could not have been caused by those proceedings." *Id.* at 98. The court explained that McKithen could have chosen to bring either his state court statutory motion for post-conviction DNA testing or his federal § 1983 suit first. *Id.* While he chose the former course, his later federal court action sought redress for an injury that existed in its exact form prior to the state-court judgment denying access to DNA testing. *Id.* Accordingly, the court held that McKithen "cannot be complaining of an injury 'caused by' the state court judgment." *Id.* at 98-99. Rather, the *preexisting* injury was "'simply ratified, acquiesced in, or left unpunished by [the state court.]'" *Id.* at 98 (alteration in original) (citation omitted).

4

Mr. Skinner does not contend that the violations of his due process rights were caused by the adverse judgments of the Texas state courts.  Mr. Skinner's injury is caused by the Defendant's refusal to provide requested access to the physical evidence for DNA testing despite the fact that such testing might well produce exculpatory results—an injury that existed prior to the state court judgment.  Indeed, even if Mr. Skinner had never brought his state court proceedings, the injury for which he would be seeking redress in the instant suit would be the same.  Accordingly, it cannot be said that the state court judgment *caused* Mr. Skinner's injury in the manner contemplated by the *Rooker-Feldman* doctrine.  *See, e.g.*, *id.* at 98-99.

In the same way, while Mr. Skinner maintains that the CCA's dispositions of his Article 64 motions were incorrect, those dispositions were not the *cause* of his injury; rather, the determinations "simply ratified, acquiesced in, or left unpunished" his *preexisting* and ongoing injury.  Mr. Skinner's injury existed in its exact form prior to the state court's orders denying access to DNA testing, caused by Defendant's failure to voluntarily provide Mr. Skinner with the requested physical evidence.  Accordingly, Defendant has not shown—and cannot show—that the second condition for applying the *Rooker-Feldman* doctrine exists here.

Moreover, Defendant fails to demonstrate that Mr. Skinner seeks review or rejection by this Court of the previous state-court judgments.  Notably, the *Rooker-Feldman* doctrine does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court," because "[i]f a federal plaintiff 'present[s] some independent claim [i.e., based on an injury not *caused* by the state-court judgment], albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction . . . .'"  *See Exxon Mobil*, 544 U.S. at 293 (first alteration and omission in original) (citation omitted).  Thus, a plaintiff who seeks in federal

court a result opposed to the one he achieved in state court does not, for that reason alone, run afoul of *Rooker-Feldman*. *See Akuna Matata Invs.*, 2006 U.S. Dist. LEXIS 7991, at *3 (case does not fall outside court's jurisdiction under the *Rooker-Feldman* doctrine merely because it relitigates claims previously brought in state court); *Hoblock*, 422 F.3d at 87 (stating that if a plaintiff seeks a result "opposed to the one he achieved in state court," the plaintiff's claim is not necessarily barred by *Rooker-Feldman*); *accord McKithen*, 481 F.3d at 98.

Mr. Skinner in no way requests that this Court review or reject any state court judgments. In fact, Mr. Skinner asserts that whether those judgments are deemed valid or invalid, his constitutionally-protected rights have been—and continue to be—violated by Defendant's continuing refusal to provide access to the requested evidence. In other words, even assuming the Texas courts correctly interpreted Article 64 of the Texas Code of Criminal Procedure, Mr. Skinner's claim continues to be viable because Defendant's denial of access to the requested evidence, in and of itself, violates Plaintiff's constitutional rights.

Defendant's invocation of the nebulous term "inextricably intertwined" only attempts to muddy the waters that the Supreme Court took pains to clarify in *Exxon Mobil*. The terms "inextricably intertwined" and "independent claim," both of which the Supreme Court has employed in the *Rooker-Feldman* context, merely state a conclusion: they simply describe those claims that meet the four requirements outlined in *Exxon Mobil*. *See id.* at 97 n.7; *Hoblock*, 422 F.3d at 86. As such, claims that meet all four of the *Exxon Mobil* requirements may be said to be "inextricably intertwined" with the previous proceedings; in contrast, those claims that do not meet the requirements may be said to have raised an "independent claim" in federal court. *See McKithen*, 481 F.3d at 97 n.7. But the term "inextricably intertwined" adds nothing to the

6

analysis this Court must undertake, and actually risks diverting the Court's focus from the four conditions that must be satisfied for *Rooker-Feldman* to bar federal jurisdiction here.

The cases on which Defendant relies, *United States v. Sheperd,* 23 F.3d 923 (5th Cir. 1994), and *Richard v. Hoechst Celanese Chemical Group, Inc.*, 355 F.3d 345 (5th Cir. 2003), provide no support for Defendant's position.  First, *Sheperd* and *Richard* (and *Liedtke v. State Bar of Tex.*) predate the Supreme Court's key decision in *Exxon Mobil* which, as discussed above, significantly reined in lower-court misapplication of the *Rooker-Feldman* doctrine.  Their diminished precedential value is apparent from the analysis courts have undertaken since *Exxon Mobil*, which is impossible to reconcile with those earlier cases' broad interpretation of *Rooker-Feldman*.  *See, e.g., Rowley v. Wilson*, 200 F. App'x 274, 275 (5th Cir. 2006) (noting the limited circumstances in which *Rooker-Feldman* is applicable and finding doctrine inapplicable); *LAC Real Estate Holdings, L.L.C.*, 320 F. App'x at 269-70 (same).

Moreover, the facts and circumstances of *Sheperd* and *Richard* bear little resemblance to those presented to this Court.  In *Sheperd*, the plaintiff requested—in sharp contrast to Mr. Skinner—that the federal court literally set aside and void a previous judgment by a state court confirming the validity of a series of foreclosure sales.  The district court had erroneously done just that, and the court of appeals, applying *Rooker-Feldman,* quite properly reversed.  *See United States v. Sheperd*, 834 F. Supp. 175 (N.D. Tex. 1993), *rev'd*, 23 F.3d 923 (5th Cir. 1994). Mr. Skinner has not asked this Court to review or void any state court judgment.

Defendant's reliance on *Richard* likewise misses the mark.  In *Richard*, a plaintiff who had been absent from a class of similar plaintiffs in a state court class action filed an identical class action suit in federal court after the state courts had turned down the class's claim, arguing that because he had been an absent member of the class, the state court had lacked personal

jurisdiction over him.  Here, Mr. Skinner cannot be said to have filed an identical claim to anything filed in state court.  (*See* Part III, *infra*.)  Notably, even the *Richard* court observed that where a state court fails to adhere to due process safeguards, *Rooker-Feldman* does not bar an absent class member from filing suit in federal court even after the class has adjudicated the claim in state court.  *See Richard*, 355 F.3d at 350-51.  That observation is relevant here:  While the CCA did indeed fail to adhere to due process safeguards, the claims before that court were not the same as those filed here.

Despite the Defendant's implied contentions to the contrary, the mere fact that Mr. Skinner raises a § 1983 claim as a result of Defendant's refusal to provide the requested evidence does not preclude the claim pursuant to *Rooker-Feldman*.  *See, e.g.*, *Hamilton v. Attorney General of La.*, No. 07-3600, 2008 WL 1836670, at *4-5 (E.D. La. April 23, 2008); *Coleman v. Terrell*, No. 07-1827, 2008 WL 1943246, at *3 (W.D. La. Mar. 23, 2008); *Scott v. Fortenberry*, 278 F. App'x 440, at *1 (5th Cir. 2008).  Indeed, courts have on multiple occasions determined that § 1983 claims stemming specifically from denial of access to DNA evidence are not barred by *Rooker-Feldman*, particularly given the narrowing effect of *Exxon Mobil*.  *See, e.g.*, *McKithen*, 481 F.3d at 99 (finding *Rooker-Feldman* doctrine inapplicable in § 1983 seeking access to DNA evidence); *Moore v. Lockyer*, No. 04-1952, 2005 WL 2334350, *4 (N.D. Cal. Sept. 23, 2005) (same), *aff'd*, 295 F. App'x 176 (9th Cir. 2008).

Defendant's position is also at odds with how the Supreme Court dealt with a § 1983 claim for DNA testing in *Dist. Attorney's Office v. Osborne*, 129 S. Ct. 2308 (2009).  In that case, the Court suggested that a prisoner could bring such a claim if state law provided for reversal of a conviction on grounds of innocence but the state's post-conviction relief procedures were "fundamentally inadequate to vindicate the substantive rights provided." *Id.* at 2320.  Unlike Mr.

8

Skinner, however, Osborne chose not to first seek relief in state court, and it was on *this* basis that the Court rejected Osborne's § 1983 claim.  As the Court said, the state's procedures were "adequate on their face" to obtain post-conviction DNA testing to support a claim of innocence, "and without trying them, Osborne can hardly complain that they do not work in practice." *Id.* at 2321.  It necessarily follows from the Supreme Court's reasoning in *Osborne* that if a prisoner *does* first attempt to utilize state procedures, as Mr. Skinner has done here, and those procedures, *as applied*, unconstitutionally deprive the prisoner of his liberty interests, as Mr. Skinner is asserting here, *then* he is entitled to vindication of those interests in federal court.  Defendant would append to the Supreme Court's analysis in *Osborne* a "gotcha" addendum: a prisoner who follows the *Osborne* prescription of first utilizing state court procedures to obtain DNA testing and finds those procedures unconstitutionally applied would, simply by reason of having followed that path, be barred by *Rooker-Feldman* from obtaining relief in a federal court.  Surely the Supreme Court could not have had any such draconian result in mind.  Thus, Defendant's position on *Rooker-Feldman* cannot be squared with the Supreme Court's analysis in *Osborne*.

In summary, Defendant has not demonstrated that the *Rooker-Feldman* doctrine may properly be applied to bar Mr. Skinner's claim.  Although the timing of Mr. Skinner's federal lawsuit meets the procedural requirements of that doctrine, it is clear that its substantive requirements have not been met.  Mr. Skinner is not complaining here of any injury *caused* by the state courts, nor has he asked this Court to stand in review of the state courts' judgments.  This Court, therefore, should deny Defendant's motion to dismiss for lack of subject matter jurisdiction.

III.   **DEFENDANT FAILS TO DEMONSTRATE THAT MR. SKINNER'S CLAIM IS BARRED BY RES JUDICATA.**

Much like Defendant's arguments regarding the *Rooker-Feldman* doctrine, Defendant's assertion that Mr. Skinner's claim is barred by res judicata ignores the differences between Mr. Skinner's current, federal constitutional claim and the previously litigated state law proceedings. In order to invoke res judicata, Defendant must show, *inter alia*, that the claims were or could have been raised in the prior proceeding. *See Schmueser v. Burkburnett Bank*, 937 F.2d 1025, 1031 (5th Cir. 1991). Defendant argues that Plaintiff's current claims either are the same as those brought in state court or are claims that might have been brought with "'due diligence' in the original proceeding." (*See* Def.'s Mot. to Dismiss at 10.) Defendant is wrong on both fronts.

Four elements must be met for a claim to be barred by res judicata: "(1) that the prior judgment was rendered by a court of competent jurisdiction; (2) that there was a final judgment on the merits; (3) that the parties, or those in privity with them, are identical in both suits; and (4) that the same cause of action is involved in both suits." *Sutherland v. Cobern*, 843 S.W.2d 127, 130 (Tex. App. 1992).

Mr. Skinner acknowledges that the CCA's decision on the first (but not the second) of his two Article 64 motions was a judgment on the merits. Moreover, Plaintiff acknowledges that Defendant, as District Attorney for the 31st District, is in privity with the State of Texas and that the CCA had competent jurisdiction to render its judgments concerning Mr. Skinner's Article 64 motions for DNA testing. It is the fourth of the essential requirements for application of res judicata—that the same claim or cause of action is involved in both cases—that is not satisfied here.

Under Texas law, which uses the "transactional approach" to determine whether two actions are "the same" for res judicata purposes, "the critical issue is whether the plaintiff bases

10

the two actions on the same nucleus of operative facts." *AEP Energy Servs. Gas Holding Co. v. Bank of Am.*, N.A., No. Civ. H-03-4973, 2004 WL 2278770, at *8 (S.D. Tex. Sept. 14, 2004). *See also Schmueser*, 937 F.2d at 1031 (finding two actions differed in their operative facts where state court action "required nothing more than a showing that the conditions contained in [a] letter of credit were satisfied" but "federal court . . . required proof that the Bank engaged in unfair or dishonest conduct).

Mr. Skinner's federal constitutional claim is hardly the "same" as either of his state law Article 64 claims, particularly because they do not share the same nucleus of operative facts. While Plaintiff's complaint outlines many details of the facts related to Mr. Skinner's pre-trial, trial, and post-conviction proceedings in order to provide this Court with sufficient context, the operative facts—those details necessary for the court to make its determination—boil down to three: (1) there exists physical evidence that contains possibly exculpatory DNA evidence; (2) Mr. Skinner has requested such evidence through all available state measures; and (3) Defendant continues to deny access to such evidence. Of these three facts, the only one relevant to and considered during the Article 64 proceedings was the first—the existence of physical evidence.

In contrast, even a cursory examination of Article 64's provisions demonstrates that, while the existence of physical evidence subject to DNA testing is a relevant fact, the range of operative facts *necessary* to prevail on a motion for DNA evidence under Article 64 goes far beyond this one detail. Such operative facts include those related to the crime itself, the evidence presented at trial, counsel's strategy at trial, and newly discovered evidence after a defendant's conviction. Absent these facts, a prisoner seeking access to DNA evidence could not meet the threshold, let alone substantive, requirements under Article 64. Stripped to its essence, a § 1983 claim seeking injunctive relief is neither based on, nor does it require consideration of, any of

11

these facts.  Accordingly, Mr. Skinner's state proceedings and federal action do not share the

same nucleus of operative facts and are, therefore, not the same claim or cause or action.

Further, the § 1983 claim raises clearly distinct issues of law from those raised in state

court.  The issue presented in Mr. Skinner's state court actions was whether, under Article 64, he

could establish by a preponderance of the evidence a reasonable probability that he would not

have been prosecuted or convicted if exculpatory results had been obtained through DNA testing.

*See* Tex. Code Crim. Proc. Ann. art. 64.03(a)(2)(A) (Vernon 2006 & Supp. 2009).   In seeking

relief under Article 64, Mr. Skinner merely asked the Texas state courts to determine whether he

was entitled to claim the rights established by state law under this statute.  In the instant case, on

the other hand, the question is whether Defendant's continued denial of access to the physical

evidence has infringed upon Mr. Skinner's (1) state- and federally-created interests in access to

DNA evidence, (2) procedural and substantive due process rights, (3) right to access to the courts,

and (4) Eighth Amendment rights.  There is no reason to suppose that the state law standard

under Article 64 applies to this federal claim or that, in finding that Article 64 did not entitle Mr.

Skinner to relief, the state court considered (or could have considered) the federal constitutional

issues he raises here.

Defendant's wholly unsupported assertion that Mr. Skinner could have brought his

federal constitutional claims as part of the Article 64 proceedings in state court also falls flat.

Notably, nothing in Article 64 even implicitly mandates DNA testing where, as Plaintiff alleges

in his current § 1983 action, such testing is required under the Federal Constitution or the Texas

Constitution and relevant statutes.  Instead, DNA testing may be authorized by the court *only* in

the specific circumstances outlined in Article 64.  *See, e.g.*, *Patrick v. State*, 86 S.W.3d 592, 595

(Tex. Crim. App. 2002) (holding that trial court lacked jurisdiction to order DNA testing at

12

applicant's expense where applicant failed to show he satisfied the requirements of Article 64).

Defendant's motion to dismiss identifies no applicable case law or statutory authority whatsoever

indicating that Mr. Skinner could, much less should, have raised his procedural and substantive

due process, access to courts, and/or Eighth Amendment claims as part of his Article 64

proceedings.

Furthermore, Defendant's assertion that Mr. Skinner should have raised his constitutional

claims in his Article 64 motions ignores the nature of his claims, which are based on the manner

in which the State's procedures for obtaining DNA testing were *applied* in Mr. Skinner's case.

As in *Osborne,* the State's procedures appear "adequate on their face," 129 S. Ct. at 2321,

making it impossible for Mr. Skinner to have anticipated that they would be inadequate as

applied.  For example, there is no way Mr. Skinner could have anticipated the arbitrary and

capricious manner in which his first Article 64 motion was decided.  (*See* Complaint, 23-25.)

Similarly, Mr. Skinner could not have anticipated that the Texas courts would unconstitutionally

apply art. 64.01(b)(1)(B) so as to penalize him for exercising his trial right to put the State to its

burden of proof.  (*See* Complaint at 30.)  *See also Sid Richardson Carbon & Gasoline Co. v.

Interenergy Res., Ltd.*, 99 F.3d 746, 756 (5th Cir. 1996) (finding plaintiff could not have brought

his claim in prior proceeding and res judicata inapplicable where federal claim had not yet

accrued).

Accordingly, because Defendant has failed to demonstrate in her motion to dismiss that

Mr. Skinner's claims were or could have been raised in state court during his Article 64

proceedings, res judicata does not preclude consideration of those claims in this action.

**PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS**

**IV.**   **WHILE THIS COURT IS LIKELY BOUND BY *KUTZNER V. MONTGOMERY COUNTY*, THAT DECISION IS ENTIRELY OUT OF STEP WITH PREVAILING LAW AND ULTIMATELY CANNOT BE SUSTAINED.**

Defendant also argues for dismissal of Mr. Skinner's § 1983 claim on the ground that *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Kutzner v. Montgomery County*, 303 F.3d 339 (5th Cir. 2002), make federal habeas corpus the exclusive means for a convicted state prisoner to obtain the release of evidence for scientific testing.  As previously asserted, it is Mr. Skinner's view that the Fifth Circuit has consistently, if incorrectly, held that *Kutzner* remains good law and governs this issue.  *See* Plaintiff's Notice of Recent Relevant Authority.  Less than one month ago, the Fifth Circuit reaffirmed its position that under *Heck* and *Kutzner* a federal claim seeking DNA access is not cognizable under § 1983 and must, instead, be brought under habeas corpus.  *See Richards v. Dist. Attorneys' Office*, No. 09-10144, 2009 WL 4716025, *1 (5th Cir. Dec. 10, 2009) (not designated for publication).

In the event that this Court determines, as Mr. Skinner expects, that it is bound by *Kutzner* and its progeny, he again respectfully requests that this Court perform its screening duties under 28 U.S.C. § 1915A and promptly dismiss Mr. Skinner's case on this ground alone so that Mr. Skinner may expeditiously bring the matter before an *en banc* Fifth Circuit or, if necessary, the Supreme Court.  However, in the event this Court determines that it is not bound by *Kutzner* and its progeny, or determines that it is bound but simply wishes to express its independent view on the subject, Mr. Skinner respectfully takes the liberty of outlining below the grounds supporting the conclusion that *Kutzner* is no longer sound law and should not be followed.

**A.**     **Any Argument that a § 1983 Claim for DNA Testing Is Barred by *Heck* Is No Longer Tenable After *Wilkinson v. Dotson*, 544 U.S. 74 (2005).**

The *Heck* doctrine instructs that a prisoner in state custody may not sue under § 1983 to challenge the fact or duration of his confinement; instead, such actions are relegated solely to the province of habeas corpus. *See Heck*, 512 U.S. at 481.  The *Heck* Court's precise formulation of the operative rule was as follows:

> [W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would *necessarily imply the invalidity of his conviction or sentence*; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed in the absence of some other bar to the suit.

*Id.* at 487 (first emphasis added).

In *Kutzner,* the Fifth Circuit was called upon to determine how *Heck* should be applied to a § 1983 claim, like this one, for post-conviction DNA testing.  The court relied heavily on the Fourth Circuit's reasoning in a similar case decided only a few months earlier, *Harvey v. Horan,* 278 F.3d 370 (4th Cir. 2002).  As the *Kutzner* court noted with approval, the Fourth Circuit determined that a § 1983 action for DNA testing failed the *Heck* test because the proposed remedy—DNA testing—"set the stage for a future attack on [the prisoner's] confinement." *See Kutzner,* 303 F.3d at 341 (quoting *Harvey,* 278 F.3d at 378).[2]

---

[2] While the *Kutzner* panel's decision was unanimous, the *Harvey* decision was not. Judge King disagreed with the majority's reasoning that an action for DNA testing met the "necessary implication" test of *Heck*.  As Judge King said, "[a]lthough Harvey might use the evidence, at some future date, to initiate a separate action challenging his conviction, future exculpation is not a necessary implication of Harvey's claim in this case."  *Harvey,* 278 F.3d at 382-83.  Furthermore, Judge Luttig of that court, while concurring in a denial of rehearing *en banc* in *Harvey,* said that had there not been an intervening change in state law that rendered Harvey's claim moot, he too would have voted for rehearing to correct the panel's "fairly clear[ ]" error in holding that a § 1983 action for DNA testing was barred by *Heck*.  *Harvey v. Horan,* 285 F.3d 298, 304, 307 (4th Cir. 2002) (Luttig, J., respecting the denial of rehearing *en banc*).  Shortly after the decisions in *Harvey* and *Kutzner,* the Eleventh Circuit also weighed in on the

*(cont'd)*

**PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS**

*Wilkinson v. Dotson*, decided three years later, was not a case seeking DNA testing; precisely as in *Kutzner* and *Harvey,* however, the plaintiff prisoners' challenge to the State's application of its parole regulations was designed to "set the stage" for them ultimately to attack the length of their confinement.  After thoroughly reviewing its jurisprudence in this area, the Supreme Court reaffirmed *Heck's* determination that there is "an implicit exception from § 1983's otherwise broad scope for actions that lie 'within the core of habeas corpus.'"  *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005) (citations omitted).  *Dotson* made clear, however, that an action does not lie at the "core" of habeas corpus unless the prisoner is challenging the fact or duration of his confinement, i.e., seeking either immediate release from prison or a shortening of his sentence.  *Id.*   The Court noted that *even though the plaintiffs' ultimate goal was to obtain a reduction of their sentences*, success in their § 1983 action would have been only one step in that process.  *Id.* at 82.  Thus, *Dotson* flatly rejected the rationale underlying *Harvey* and *Kutzner* that a § 1983 action will not lie if success in that action would merely "set the stage" for invalidating a conviction or reducing a sentence.  As the Court said, "[b]ecause neither prisoner's claim would *necessarily* spell speedier release, neither lies at 'the core of habeas corpus.'"  *Id.* at 82 (emphasis added).  In short, the *Dotson* Court made it clear that it meant what it said when it used  the word "necessarily" in *Heck*.   *Id.  See also, Nelson v. Campbell*, 541 U.S. 637, 647 (2004) ("[W]e were careful in *Heck* to stress the importance of the term 'necessarily.'").

---

*(cont'd from previous page)*

issue.  In *Bradley v. Pryor*, 305 F.3d 1287, 1290 (11th Cir. 2002), that court rejected the result in *Harvey* and explicitly adopted the reasoning of Judges King and Luttig that nothing in the result sought by a plaintiff seeking production of DNA evidence in a § 1983 suit "necessarily demonstrates, or even implies, that his conviction is invalid."

**PLAINTIFF'S RESPONSE TO**
**DEFENDANT'S MOTION TO DISMISS**

**B.      Post-*Dotson* Decisions Consistently Confirm that Requests for DNA Evidence May Properly Be Brought Under § 1983.**

Every Circuit Court of Appeals that has had the opportunity to consider the issue since *Dotson* has held that *Heck* does not bar § 1983 actions in which a prisoner seeks only access to evidence for DNA testing.  *See McKithen v. Brown,* 481 F.3d 89 (2d Cir. 2007); *Savory v. Lyons,* 469 F.3d 667 (7th Cir. 2006); *Osborne v. Dist. Attorney's Office,* 423 F.3d 1050, (9th Cir. 2005), *rev'd on other grounds,* 129 S. Ct. 2308 (2009).[3]  Each of these cases, relying on the Supreme Court's reasoning in *Dotson*, affirmed the critical difference between the limited nature of the relief sought in the § 1983 actions (i.e., access to evidence) and the plaintiff's ultimate—and indefinite—objective of establishing his innocence and obtaining post-conviction relief in a subsequent, independent action.[4]

In addition to the resounding affirmation that *Heck* is inapplicable in this circumstance, as demonstrated by the overwhelming consensus among the circuit courts, the Supreme Court itself has recently declined an opportunity to upset that consensus.  In *Osborne*, the High Court granted *certiorari* to consider, *inter alia,* that precise issue.  129 S. Ct. at 2319.  However, after noting that all circuit courts that have addressed the issue since *Dotson* have found *Heck* inapplicable, the Court assumed that *Heck* did not bar Osborne's § 1983 claim and reached the merits of the case.  *See id.*  The Court's decision to reach the merits, particularly where it could easily have disposed of the case on this threshold issue, indicates at a minimum that a majority of

---

[3] Several district courts in other circuits have also determined that *Heck* does not bar § 1983 actions seeking access to DNA evidence.  *See, e.g.*, *Breest v. N.H. Attorney Gen.*, 472 F. Supp. 2d 116, 120 (D.N.H. 2007); *Wade v. Brady*, 460 F. Supp. 2d 226, 236-37 (D. Mass. 2006).

[4] Importantly, if successful in this action, Mr. Skinner may choose to utilize the DNA evidence as part of an application for executive clemency, "the heart of . . . which is to grant clemency as a matter of grace," *see Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 280-81 (1998), and thus would not "necessarily" result in either speedier release from incarceration or the invalidity of his conviction.

**PLAINTIFF'S RESPONSE TO**
**DEFENDANT'S MOTION TO DISMISS**

the Court saw no reason to interfere with the approach of the "emerging consensus." *See*

*McKithen,* 481 F.3d at 103 n.15.

**C.      The Fifth Circuit Is Alone in Continuing to Insist That § 1983 Claims for DNA Testing Are Barred by *Heck.***

In the wake of *Dotson* and subsequent decisions by its sister circuits, it appears that *only*

courts in the Fifth Circuit continue to reject § 1983 claims for DNA testing on *Heck* grounds.

*See, e.g.*, *Richards*, 2009 WL 4716025, at *1 (affirming, without any acknowledgement of

*Dotson* or conflicting decisions in other circuits, the dismissal of a *pro se* § 1983 claim seeking

DNA testing as barred by *Heck* under *Kutzner*).   In their research, Plaintiff's counsel have failed

to find a single post-*Dotson* decision in any other circuit, at either the court of appeals or district

court level, that has dismissed a § 1983 claim for DNA testing on *Heck* grounds.   Clearly the

Fifth Circuit is out of step with the overwhelming weight of recent authority.

Mr. Skinner does not expect this Court to feel free to deviate from existing Fifth Circuit

precedent, particularly in light of recent affirmation of that precedent in *Richards*.   However, he

does respectfully request that the Court expeditiously resolve the issue as it deems it must so that

he will have sufficient time prior to his scheduled execution to have it heard and decided at a

higher level.

**V.      PLAINTIFF'S § 1983 CLAIM IS NOT THE FUNCTIONAL EQUIVALENT OF A SUCCESSIVE HABEAS PETITION.**

Mr. Skinner's claim does not amount to a successive habeas petition.   As explained in

detail *supra*, a claim brought under § 1983 may not be treated as an actual habeas claim subject

to the constraints of the AEDPA unless it amounts to the "functional equivalent" to a habeas

petition.   *See Nelson*, 541 U.S. at 642-43.   Under federal law, § 1983 only "yield[s] to the more

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS

specific federal habeas statute, with its attendant procedural and exhaustion requirements, where an inmate seeks injunctive relief challenging the fact of his conviction or the duration of his sentence." *Id.* at 643 (holding that plaintiff's § 1983 claim did not constitute a successive petition where plaintiff's claim did not challenge the validity of his conviction).

As discussed above, Mr. Skinner's § 1983 claim is not the "functional equivalent" of a habeas petition as it does not challenge the validity of his conviction or sentence and, therefore, may not be deemed "successive."  Moreover, if Mr. Skinner wishes to challenge his sentence and conviction on the basis of any future DNA testing of the pieces of evidence specified in his Complaint, he will, at least as far as the federal courts are concerned, be required to seek habeas corpus relief in an action wholly separate from the instant matter.  Because Plaintiff's § 1983 action is not the functional equivalent of an application for habeas corpus relief, this Court may properly exercise jurisdiction.

## VI.    DEFENDANT IS NOT ENTITLED TO ATTORNEY'S FEES IF THE COURT DOES NOT RULE IN PLAINTIFF'S FAVOR.

Defendant seeks attorneys' fees "pursuant to 42 U.S.C. § 1988(b) and/or 28 U.S.C. §1919."  (Def. Mot. to Dismiss at 11.)  Respecting the latter statute, it is well-established that, while a district court may award "just costs" under 28 U.S.C. § 1919, the term "costs" does not include attorneys' fees.  *See Wilkinson v. D.M. Weatherly Co.*, 655 F.2d 47, 49 (5th Cir. 1981). Accordingly, Defendant is not entitled to attorneys' fees under 28 U.S.C. § 1919.

Moreover, as a general matter, a prevailing defendant in a § 1983 suit is not entitled to attorneys' fees under 42 U.S.C. § 1988.  "The primary purpose of the attorney's fees provision in § 1988 is to encourage private enforcement of the civil rights statutes."  *Vaughner v. Pulito*, 804 F.2d 873, 878 (5th  Cir. 1986) (citation omitted).  While attorney's fees should be awarded to a

19

prevailing plaintiff in all but special circumstances, *see White v. So. Park Indep. School Dist.*, 693 F.2d 1163, 1169 (5th Cir. 1982), a court may award attorney's fees to a prevailing defendant under § 1988 *only if* it specifically finds that plaintiff's suit was "'frivolous, unreasonable or without any foundation,'"[5] *Vaughner*, 804 F.2d at 878 (citation omitted); *see also Hughes v. Rowe*, 449 U.S. 5, 14 (1980) ("The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees.").

To avoid discouraging all but "airtight claims," courts focus on whether a plaintiff's claim is colorable and of arguable merit.  *See Jones v. Tex. Tech Univ.*, 656 F.2d 1137, 1145 (5th  Cir. 1982) (finding district court abused its discretion by awarding attorneys' fees to defendant where record had not shown that the case was so lacking in arguable merit as to be groundless and without foundation).  The Fifth Circuit has recognized that "[e]ven when the law or the facts appears questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit."  *White*, 693 F.2d at 1170 (citation omitted) (reversing district court's award of attorneys' fees to prevailing defendant).  This principle applies with equal force to cases in which the plaintiff fails to establish a valid claim under § 1983.  *See, e.g.*, *Stenseth v. Greater Fort Worth & Tarrant County Cmty. Action Agency*, 673 F.2d 842, 849-50 (5th Cir. 1982) (affirming district court's finding that plaintiff did not establish a claim but reversing reward of attorneys' fees against plaintiff).

---

[5] This limitation attempts to prevent any chilling effect on the enforcement of civil rights.  *See Vaughner*, 804 F.2d at 878.  The Fifth Circuit has warned that "private enforcement would be substantially diminished if parties who had good faith claims under the civil rights statutes faced the prospect of always having to pay their opponent's fees should they lose."  *Id.; see also Hughes v. Rowe*, 449 U.S. 5, 14-15 (1980) (equating § 1983 claims with Title VII claims and stating "'[t]o take the further step of assessing attorney's fees against plaintiffs simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII'" (citation omitted)).

**PLAINTIFF'S RESPONSE TO**
**DEFENDANT'S MOTION TO DISMISS**

In applying this framework to the present case, the Court should take account of the state of the law at the outset of the suit.  When Mr. Skinner filed his Complaint and Brief in Support of his Motion for Preliminary Injunction, he had powerful legal and factual bases for asserting not only that his claim had arguable merit, but that it was likely to succeed on the merits.  Due to intervening legal developments—which Plaintiff brought to the Court's attention, (*see* Plaintiff's Notice of Recent Relevant Authority)—it appears that Circuit precedent (i.e., *Kutzner*) may foreclose success in this Court, notwithstanding strong arguments that would support a contrary result.  (*See supra*.)  Mr. Skinner respectfully submits that under prevailing federal law, he has presented a colorable claim for which there existed reasonable grounds to bring suit against Defendant.  Further, nothing about Plaintiff's conduct in this suit justifies a finding that he has acted "unreasonably" as that term is contemplated by, *e.g.*, *Vaughner*, *supra*.  Under these circumstances, even if the Court does not grant Plaintiff's requested relief, it should decline to award attorneys' fees to Defendant.

**PLAINTIFF'S RESPONSE TO**
**DEFENDANT'S MOTION TO DISMISS**

## CONCLUSION

For the foregoing reasons, as well as those asserted in Plaintiff's Complaint and Brief in Support of Plaintiff's Motion for Preliminary Injunction, this Court should deny Defendant's Motion to Dismiss.

Respectfully submitted,

/s/ Robert C. Owen_____
**ROBERT C. OWEN***
**Texas Bar No. 15371950**
**Owen & Rountree, L.L.P.**
**P.O. Box 40428**
**Austin, Texas  78704**
**Phone: (512) 232-9391**
**Fax: (512) 804-2685**
**robowenlaw@gmail.com**

**DOUGLAS G. ROBINSON**
**1440 New York Avenue, N.W.**
**Washington, D.C. 20005**
**Phone: (202) 371-7800**
**Fax: (202) 371-7168**
**douglas.robinson@skadden.com**

**MARIA CRUZ MELENDEZ**
**Four Times Square**
**New York, NY 10036-6522**
**Phone: (212) 735-2435**
**Fax: (212) 735-2000**
**maria.cruzmelendez@skadden.com**

*Counsel for Plaintiff*

January 6, 2010

22

## <u>CERTIFICATE OF SERVICE</u>

On January 6, 2010, I electronically submitted the foregoing document to the Clerk of Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or *pro se* parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Douglas G. Robinson
Douglas G. Robinson

23