IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| HENRY WATKINS SKINNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:09-CV-281-J-BB |
| | ) | |
| LYNN SWITZER, District Attorney | ) | |
| 31st Judicial District of Texas, | ) | |
| | ) | |
| Defendant. | ) | |

BRIEF IN SUPPORT OF DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID C. MATTAX
Deputy of Defense Litigation

JONATHAN F. MITCHELL
Solicitor General
State Bar No. 24075463

ARTHUR C. D'ANDREA
Assistant Solicitor General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1695
Fax: (512) 474-2697

COUNSEL FOR DEFENDANT

# TABLE OF CONTENTS

Index of Authorities ........................................................................................................iii

I.    Skinner's Claims Against Switzer Are Barred By the Doctrine of
      Claim  Preclusion. ..................................................................................... 4

II.   Skinner  Cannot  Establish  That  Switzer  Violated  His
      Constitutional Rights  When He Had The  Opportunity to
      Conduct DNA Testing During His Trial................................................ 11

III.  Skinner  Cannot  Establish  That  Switzer  Violated  His
      Constitutional Rights When DNA Testing Will Not Exonerate
      Him ........................................................................................................... 20

Conclusion ........................................................................................................... 23

Certificate of Service............................................................................................ 24

# INDEX OF AUTHORITIES

## Cases

*Armstadt v. U.S. Brass Corp.,*
    919 S.W.2d 644 (Tex. 1996) ............................................................................... 4

*Briggs v. State,*
    789 S.W.2d 918 (Tex. Crim. App. 1990) .......................................................... 8

*Coleman v. Thompson,*
    501 U.S. 722 (1991) ......................................................................................... 16

*Curry v. State,*
    186 S.W.3d 39 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ...................... 6

*Dist. Attorney's Office for Third Judicial Dist. v. Osborne,*
    129 S. Ct. 2308 (2009) ................................................................. 1, 13, 19, 21

*Fay v. Noia,*
    372 U.S. 391 (1963) ................................................................................... 16, 17

*Hallco Tex., Inc. v. McMullen County,*
    221 S.W.3d 50 (Tex. 2006) ..................................................................... 8, 9, 10

*Igal v. Brightstar Info. Tech. Group, Inc.,*
    250 S.W.3d 78 (Tex. 2008) ....................................................................... 4, 10

*Migra v. Warren City Sch. Dist. Bd. of Educ.,*
    465 U.S. 75 (1984) ........................................................................................... 10

*People v. Rathbun,*
    21 Wend. 509 (N.Y. Sup. Ct. 1839) ............................................................... 16

*Reger v. State,*
    222 S.W.3d 510 (Tex. App.—Fort Worth 2007, pet. ref'd.) ........................... 6

*Skinner v. Quarterman,*
    528 F.3d 336 (5th Cir. 2008), *aff'd,* 576 F.3d 214 (5th Cir. 2009) ........... 1, 7, 11, 12

*Skinner v. Quarterman,*
    No. 2:99-CV-0045, 2007 WL 582808 (N.D. Tex. Feb. 22, 2007) ............. 1, 11, 12, 22

*Skinner v. State,*
    956 S.W.2d 532 (Tex. Crim. App. 1997) ................................................................ 22

*Skinner v. State,*
    122 S.W.3d 808 (Tex. Crim. App. 2003) .................................................................. 8

*Skinner v. State,*
    293 S.W.3d 196 (Tex. Crim. App. 2009) ................................................ 5, 8, 11, 12

*State v. Patrick,*
    86 S.W.3d 592 (Tex. Crim. App. 2002) .................................................................... 6

*Wainwright v. Sykes,*
    433 U.S. 72 (1977) ...................................................................................... 14, 16, 17

## Statutes, Rules, and Constitutional Provisions

U.S. CONST. art. VI, cl. 2 ................................................................................................ 5

18 U.S.C. § 3600(a)(1) ................................................................................................ 18

28 U.S.C. § 2254(e)(2) ................................................................................................ 14

ALA. CODE § 15-18-200(e)(2)(b) ................................................................................. 20

ARK. CODE ANN. § 16-112-201(a) ............................................................................... 20

D.C. CODE § 22-4135(d)(1) ......................................................................................... 20

DEL. CODE ANN. tit. 11, § 4504(a)(2) ......................................................................... 20

FED. R. CIV. P. 56(c) ................................................................................................... 21

GA. CODE ANN. § 5-5-41(c)(3)(B) ............................................................................... 20

IDAHO CODE ANN. § 19-4902(b) ................................................................................. 20

ME. REV. STAT. ANN. tit. 15, § 2138(10)(c) ................................................................ 20

MINN. STAT. § 590.01(1a)(2) ....................................................................................... 20

MO. REV. STAT. § 547.035(2)(3) .................................................................................. 20

N.D. CENT. CODE § 29-32.1-15(1)(b) .............................................................. 20

NEV. REV. STAT. § 176.0918(3)(e) .................................................................. 20

OHIO REV. CODE ANN. § 2953.74(B) .............................................................. 20

42 PA. CONS. STAT. § 9543.1(a)(2) .................................................................. 20

Religious Freedom Restoration Act of 1993 (RFRA), 107 Stat. 1488, 42
    U.S.C. § 2000bb *et seq* ............................................................................ 18

Religious Land Use and Institutionalized Persons Act of 2000
    (RLUIPA), 114 Stat. 803, 42 U.S.C. § 2000cc *et seq* ................................ 18

TEX. CODE CRIM. PROC. art. 64.01(a) ............................................................ 19

TEX. CODE CRIM. PROC. art. 64.01(b)(1) .......................................................... 7

TEX. CODE CRIM. PROC. art. 64.03(a)(2)(A) ...................................................... 6

UTAH CODE ANN. § 78-35a-301(4) .................................................................. 20

VA. CODE ANN. § 19.2-327.1(A) ...................................................................... 20

W. VA. CODE ANN. § 15-2B-14(f)(6)(B) .......................................................... 20

WYO. STAT. ANN. § 7-12-303(d) ...................................................................... 20

**Other Authorities**

18B CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE §
    4412 (4th ed. 2011) ...................................................................................... 5

Bryan A. Garner,
    *A Dictionary of Modern Legal Usage* 404 (2d ed. 1995) ......................... 15

D. Rosenberg & S. Shavell,
    *A Model in Which Suits Are Brought for Their Nuisance Value*,
    5 INT'L REV. L. & ECON. 3 (1985) .............................................................. 3

Frank H. Easterbrook, *Foreward: The Court and the Economic System*,
    98 HARV. L. REV 4 (1983) ......................................................................... 4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| HENRY WATKINS SKINNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:09-CV-00281 |
| | ) | |
| LYNN SWITZER, District Attorney | ) | |
| for the 31st Judicial District | ) | |
| of Texas, | ) | |
| | ) | |
| Defendant. | ) | |

BRIEF IN SUPPORT OF DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

DNA testing "has an unparalleled ability both to exonerate the wrongly convicted and identify the guilty." *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 129 S. Ct. 2308, 2313 (2009). It also creates new opportunities for convicted criminals and their lawyers to abuse the legal system. This case is a paradigmatic example of that.

The State of Texas gave Henry Skinner an opportunity at his trial to test the DNA evidence that he now wants tested. But Skinner and his trial attorneys made an informed, tactical decision to forego that opportunity. *See Skinner v. Quarterman*, No. 2:99-CV-0045, 2007 WL 582808, at *31 (N.D. Tex. Feb. 22, 2007); *Skinner v. Quarterman*, 528 F.3d 336 (5th Cir. 2008), *aff'd*, 576 F.3d 214 (5th Cir. 2009). Skinner and his lawyers knew that the evidence could only confirm his guilt rather than exonerate him. Indeed, Skinner had offered to plead guilty to first-

degree murder prior to trial in exchange for a life sentence.[1] *See* Habeas Evid. Hr'g Tr. at 135; App. at 4. And Skinner's lawyers hoped to win an acquittal by attacking the government's investigation as shoddy and incomplete; leaving the remaining DNA evidence untested was crucial to these efforts to create doubts in the minds of jurors. The failure of Skinner's trial strategy does not entitle him to change course in post-conviction proceedings and demand testing of the very evidence that he deliberately declined to test at trial. And nothing in the Constitution requires District Attorney Switzer to tolerate or encourage the gamesmanship that Skinner has displayed in this litigation, or the piecemeal litigation tactics he has deployed to delay his execution date. The State of Texas satisfied all requirements of constitutional due process when it offered Skinner the opportunity to test the DNA evidence at trial; Skinner forfeited that opportunity by his strategic refusal to test the evidence at that time.

Even if Skinner were seeking to test DNA evidence distinct from the evidence that he declined to test at trial, District Attorney Switzer would *still* be entitled to summary judgment because Skinner cannot show that he might be actually innocent of the murders or that further DNA testing might exonerate him. Whatever the post-*Osborne* scope of an inmate's procedural due-process right to DNA testing in state-created post-conviction procedures, the Constitution cannot possibly compel States to accommodate a convict's demands for DNA testing absent

---

[1] Although plea negotiations are often kept confidential, Skinner accused his trial lawyers of ineffective assistance in his federal habeas proceedings, waiving the attorney-client privilege and causing his plea offer to become part of the public record.

a plausible showing that the tests might exonerate him. In this case, Skinner does not even assert in his complaint or in any document filed with this Court that he is in fact innocent of these murders. And he cannot, in light of his pre-trial guilty-plea offer and the overwhelming evidence of his guilt, establish a genuine factual question that further DNA testing might exonerate him, or enable him to pursue an actual-innocence claim in state post-conviction procedures.

Skinner also had opportunities, in each of the Article 64 proceedings that he initiated in state court, to present his claim that the Constitution requires Texas to accommodate his demands for additional post-conviction DNA testing. Once again, Skinner spurned these opportunities. Because Skinner could have presented his federal constitutional claim in the Article 64 proceedings but never did, the doctrine of claim preclusion forecloses him from doing so now.

It is apparent that Skinner and his lawyers have brought this case as a strike suit. They know that the out-of-pocket costs to Gray County of testing the DNA are negligible, as Skinner has volunteered to pay for the testing himself, while the costs of defending this lawsuit have been far higher. Given these stakes, it might seem that a rational defendant would settle and allow the DNA testing to proceed, especially given the abundant evidence of Skinner's guilt. *See* D. Rosenberg & S. Shavell, *A Model in Which Suits Are Brought for Their Nuisance Value*, 5 INT'L REV. L. & ECON. 3 (1985). District Attorney Switzer has refused to follow this course, however, because she understands that the long-term costs to the State of giving into Skinner's demands are incalculably higher. If Skinner is allowed to test this

3

DNA evidence, then every guilty criminal defendant will want to forego DNA testing at trial and then use the untested DNA evidence as a post-conviction litigation tool to endlessly delay or hinder implementation of the sentence. *See, e.g.,* Frank H. Easterbrook, *Forward: The Court and the Economic System*, 98 HARV. L. REV. 4, 10–12 (1983) (urging courts to consider how their decisions create incentives influencing conduct ex ante, and warning that attempts to achieve "fair" results in individual disputes may produce undesirable signals from an ex ante perspective). Such an outcome would impose intolerable costs on prosecutors, especially in small counties with limited budgets, and courts cannot encourage litigation tactics that will lead to this result.

## I.    Skinner's Claims Against Switzer Are Barred By the Doctrine of Claim Preclusion.

The doctrine of claim preclusion (res judicata) bars litigants from presenting claims that they could have raised in a previous court proceeding but did not. Under Texas law, a res judicata defense consists of three elements: "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) the same parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Igal v. Brightstar Info. Tech. Group, Inc.*, 250 S.W.3d 78, 86 (Tex. 2008); *see also Armstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996).

Skinner concedes that District Attorney Switzer has satisfied the first two elements of a claim-preclusion defense, at least with respect to his initial Article 64

proceeding.[2]  *See* Pl.'s Resp. to Def.'s Mot. to Dismiss at 10.  He disputes only the third element, insisting that he was unable to raise his constitutional claims in the Article 64 proceedings.  *See id.* at 12–13.

Skinner first contends that he could not have raised his federal constitutional claims in the earlier proceeding because state law forbids courts to authorize post-conviction DNA testing outside the specific circumstances outlined in Article 64.  *Id.* at 12.  Skinner conveniently ignores Article VI of the Constitution, which *compels* state law to yield to the "supreme Law of the Land" and specifically enlists the "Judges in every State" to enforce this hierarchy.  If the Due Process Clause requires Texas to test Skinner's DNA evidence and Article 64 forbids it, then state judges are obligated to follow the constitutional command over a state statute. Skinner cannot evade a res judicata defense, nor excuse his failure to present his constitutional arguments in the state-court proceedings, by imagining a world in which state judges are forbidden to follow the Constitution when it conflicts with state law.

Of course, litigants may sometimes avoid claim preclusion if the first court lacked subject-matter jurisdiction over the relevant claim.  *See* 18B CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 4412 (4th ed. 2011).  And the Supremacy Clause allows states to channel constitutional litigation into an

---

[2]  Skinner asserts that the second Article 64 judgment fails to satisfy the final-judgment-on-the-merits criterion, but he does not explain why.  The state trial court denied Skinner's motion on the merits and the Court of Criminal Appeals "affirmed" that court's "judgment" on appeal.  *See Skinner v. State*, 293 S.W.3d 196, 209 (Tex. Crim. App. 2009). Skinner cannot characterize this disposition as a jurisdictional dismissal, and each of the Article 64 proceedings provide Switzer with a claim-preclusion defense.

appropriate forum; small-claims courts need not be required to resolve million-dollar civil-rights disputes. But state district courts in Article 64 proceedings may entertain constitutional challenges to the State's restrictions on DNA testing; prisoners commonly assert constitutional challenges along with their Article 64 claims and state courts resolve those claims on the merits. *See, e.g.*, *Reger v. State*, 222 S.W.3d 510, 514 (Tex. App.—Fort Worth 2007, pet. ref'd.) (denying a motion for testing under Article 64 and rejecting an equal-protection challenge to the statute); *Curry v. State*, 186 S.W.3d 39, 43 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (denying a motion for testing under Article 64 and rejecting a due-process challenge to the statute). Although it is sometimes loosely said that a trial court "lacks jurisdiction" to order testing *under Article 64* if the statute's requirements are not satisfied, *see State v. Patrick*, 86 S.W.3d 592, 595 (Tex. Crim. App. 2002), an Article 64 tribunal must resolve the merits of any attendant constitutional challenges, as *Reger* and *Curry* illustrate, leaving Skinner without any basis for his "futility" defense.

Skinner's next attempted excuse is that he "could not have anticipated" that Texas courts would apply Article 64 as they did, in a manner that denied him access to DNA testing. *See* Pl.'s Resp. to Def.'s Mot. to Dismiss at 13. How could he "not have anticipated" this outcome? The text of the statute is as clear as can be: No post-conviction DNA testing unless the applicant can show, by a preponderance of the evidence, that he "would not have been convicted if exculpatory results had been obtained through DNA testing." TEX. CODE CRIM. P. art. 64.03(a)(2)(A). Skinner

6

would have to convince a court that an "exculpatory" test result would have caused the jury to acquit notwithstanding his bloody handprints throughout the house where the murders occurred; his admission that he was in the house during the murders; his failure to call the police or seek help for the victims; his decision to flee to Andrea Reed's house wearing clothes soaked with the victims' blood; his threat to kill Reed and her children if she called the police; and his decision to hide in a closet when the police arrived.  *Skinner v. Quarterman*, 528 F.3d 336, 39–40 (5th Cir. 2008).  Any lawyer familiar with Skinner's case would need only to read Article 64 to know that Skinner would be facing an uphill climb in satisfying the statutory criteria, and that only by asserting a federal constitutional entitlement to post-conviction DNA testing would he have much of a chance of persuading the state court to authorize the testing.

Likewise for Article 64.01(b)(1), which precludes post-conviction DNA testing of evidence that was previously available for testing at trial, unless the applicant can demonstrate an absence of "fault" and that the "interests of justice" require it. Skinner says that he "could not have anticipated that the Texas courts would unconstitutionally apply art. 64(b)(1)(B) so as to penalize him for exercising his trial right to put the State to its burden of proof."  *See* Pl.'s Resp. to Def.'s Mot. to Dismiss at 13.  Yet Skinner *never even argued* that relying on art. 64.01(b)(1)(B) to deny Skinner's request would violate the Constitution; how could he possibly have expected the state court to base its decision on a novel constitutional argument that neither party presented and that was not subject to adversarial testing?  Skinner

7

cannot excuse his failure to present his federal constitutional claims by acting as if they are so patently obvious that every judge would realize them without needing counsel to bring them to his attention.

In all events, even if Skinner was surprised by the grounds on which the courts rejected his Article 64 motions, he *appealed* both trial courts' Article 64 rulings to the Court of Criminal Appeals, *and* he moved for re-hearing after the CCA affirmed the trial court's ruling in the first Article 64 proceeding. *Skinner v. State*, 122 S.W.3d 808, 811 (Tex. Crim. App. 2003); *Skinner v. State,* 293 S.W.3d 196, 202 (Tex. Crim. App. 2009). He had ample opportunity to raise and develop his constitutional due-process arguments in either the appeal or the re-hearing motion, in response to the allegedly unconstitutional state-court denials of his requests for post-conviction DNA testing. *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990) (holding that an appellant does not waive error by failing to raise a facial constitutional challenge to a statute at trial). One who both appeals and petitions for rehearing cannot invoke a didn't-see-it-coming defense to excuse himself from the res judicata doctrine.

Finally, Skinner implies that his section 1983 lawsuit and the earlier Article 64 proceedings do not "arise out of the same nucleus of operative facts." *See* Pl.'s Resp. to Def.'s Mot. to Dismiss at 11. The Texas Supreme Court, however, holds that the doctrine of claim preclusion extends to claims that arise out of the "same subject matter," *see Hallco Tex., Inc. v. McMullen County*, 221 S.W.3d 50, 58 (Tex. 2006) (noting that Texas applies the "transactional approach" to res judicata,

"which requires claims *arising out of* the same subject matter to be litigated in a single lawsuit.") (emphasis added), and Skinner cites only an unpublished district-court opinion to support his "same nucleus of operative facts" variant.

Ultimately, Skinner's federal constitutional claims are precluded under either standard.

Both Skinner's Article 64 proceedings and the section 1983 lawsuit arise out of the District Attorney's decision to reject Skinner's demands for post-conviction DNA testing. That is the "same subject matter" (or, if one prefers, the "same nucleus of operative facts") and it precludes Skinner's federal constitutional claims in this lawsuit. Skinner notes that his federal constitutional claims turn on specific facts that differ from those at issue in an Article 64 proceeding. *See* Pl.'s Resp. to Def.'s Mot. to Dismiss at p. 11. But the test for res judicata is not whether the claims require proof of the same facts, or even whether the claims involve the same facts. It is whether they *arise out of* the same subject matter or same nucleus of operative facts. *Hallco,* 221 S.W.3d at 58. Skinner does not (and cannot) deny that his Article 64 claims and the federal constitutional claims that he presents in this case both arise out of the prosecution's refusal to accommodate Skinner's demands for post-conviction DNA testing. And Skinner's assertion that his section 1983 claim raises "distinct issues of law" from the claims that he litigated in state court is irrelevant to a claim-preclusion defense. *See id.* at 58–59. ("Whether or not a cognizable distinction may be drawn between . . . claims, of course, does not answer the question of whether res judicata bars its as-applied challenge here. Certainly a

contract claim is distinct from one based in tort, but if the claims arise out of the same subject matter and can be brought together they cannot be asserted separately.").

The Supreme Court of Texas has emphasized the strong "public policy discouraging prolonged and piecemeal litigation," *Igal*, 250 S.W.3d at 86, and Skinner has no excuse for his failure to present his federal constitutional claims in the Article 64 proceedings. *See Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 84 (1984) (holding that claim preclusion bars constitutional challenges under section 1983 that could have been brought in a prior state court proceeding because "it is more important to give full faith and credit to state-court judgments than to ensure separate forums for federal and state claims," and relying on "notions of comity, the need to prevent vexatious litigation, and a desire to conserve judicial resources."). The current lawsuit against District Attorney Switzer represents an unreasonable and vexatious multiplication of Skinner's post-conviction proceedings, an example of the "needless, repetitive litigation" that the doctrine of claim preclusion is designed to avoid. *Hallco*, 221 S.W.3d at 58.

A dismissal on res judicata grounds is not only compelled by doctrine, but is also necessary to counter the powerful incentives of death-row inmates to engage in piecemeal litigation. Only Skinner's lawyers know why they chose to raise his federal constitutional claims for the first time in a civil section 1983 suit, but it is easy to see how their litigation tactics benefitted Skinner—even if the current lawsuit results (as it should) in a res judicata dismissal. By saving his federal

constitutional claims for a section 1983 lawsuit, and then waiting for nearly two years after the conclusion of the final Article 64 proceeding to bring those claims, Skinner has managed to prolong his post-conviction litigation and win a stay of execution from the Supreme Court of the United States—none of which would have been possible had he diligently presented his federal constitutional claims in the Article 64 proceedings. The benefits to Skinner of this delay more than outweigh the costs of enduring a res judicata dismissal at this point in the litigation, especially when Skinner's weak constitutional claim had little chance of succeeding on the merits in the first place.

There are no genuine issues of material fact on whether Skinner could have presented his federal constitutional claims in the Article 64 proceedings, and District Attorney Switzer is therefore entitled to judgment as a matter of law.

## II.    Skinner Cannot Establish That Switzer Violated His Constitutional Rights When He Had The Opportunity to Conduct DNA Testing During His Trial.

Skinner acknowledges that the State provided him an opportunity to test the DNA evidence during his trial. *See* Br. in Support of Pl.'s Mot. For Prelim. Injunc. at 31–36. He also concedes that he did not use this opportunity. *Id.* at 34. No fewer than three courts have concluded that Skinner's defense lawyers made a reasonable, tactical decision for forego testing because they feared that additional crime-scene evidence would further implicate Skinner rather than exonerate him. *See Skinner v. Quarterman*, 2007 WL 582808 *31–32; *Skinner v. Quarterman*, 528 F.3d at 341–42); *Skinner v. State*, 293 S.W.3d at 202. Each of those courts also rejected Skinner's contentions that his trial attorneys failed to satisfy the

11

constitutional standards for effective assistance of counsel. The Fifth Circuit refused even to grant a certificate of appealability on this question. *Skinner*, 2007 WL 582808 at *31–32; *Skinner*, 528 F.3d at 341–42; *Skinner*, 293 S.W.3d at 202.

The federal district court in Skinner's habeas corpus proceedings made the most extensive findings regarding the strategic decisions of Skinner's trial lawyers. See *Skinner*, 2007 WL 582808 at *31–32. The district court determined that Harold Comer (Skinner's trial attorney) decided to pass on further DNA testing because he feared, based on the overwhelming evidence of Skinner's guilt, that the testing would only further implicate Skinner and provide additional incriminating evidence for the prosecution. The items that had already been tested, such as the bloodstains on Skinner's clothing, had damaged Skinner's case and Comer did not want additional inculpatory evidence to be presented to the jury. *Id.* at *29. The district court found that Comer reasonably believed that he would be unable to keep the test results secret from the prosecutors, as the State had custody of the evidence, would know what items Skinner requested for testing, and would then decide to test those items for themselves. *Id.* at *31 & n.9. Comer also decided against further DNA testing because he wanted to attack the government at trial for its failure to test all of the available DNA evidence, and use those omissions to plant seeds of doubt in the minds of jurors. *Id.* at *32.

Skinner has not disputed any aspect of Comer's testimony in his complaint or in his other filings with this Court, and even if he did, the state and federal courts' rejection of Skinner's ineffective-assistance claims would nevertheless bind this

Court under the doctrine of issue preclusion (collateral estoppel). (We have included the relevant portions of Comer's sworn testimony, App. 7–8, and the court opinions evaluating Comer's performance, App. 50–53, 71, 82–83, in the appendix to this motion.)

This undisputed evidence entitles District Attorney Switzer to judgment as a matter of law. Skinner's trial attorneys, acting as his agents, made a sensible and strategic decision to forego DNA testing. Defense counsel knew that Skinner had offered to plead guilty to first-degree murder in exchange for a life sentence and that the evidence of his guilt was overwhelming; any reasonable lawyer in their situation would conclude that further DNA testing was far more likely to implicate Skinner rather than exonerate him. They also hoped to win an acquittal by criticizing the prosecution for its failure to test all the remaining DNA evidence. The Due Process Clause cannot entitle a criminal defendant to forego DNA testing at trial as part of his strategy to win an acquittal, and then, when that strategy fails, to turn around and assert a constitutional entitlement to test in post-conviction proceedings the very evidence that he declined to test during his trial. This would confer nothing less than a constitutional right to litigate by sandbagging. *See Osborne*, 129 S. Ct. at 2317 (citing with approval State laws that "deny [post-conviction DNA] testing to those who declined testing at trial for tactical reasons"); *id.* at 2329 (Alito, J., concurring) ("When a criminal defendant, for tactical purposes, passes up the opportunity for DNA testing at trial, that defendant . . . has no constitutional right to demand to perform DNA testing after conviction.

13

Recognition of such a right would allow defendants to play games with the criminal justice system."). And it cannot be reconciled with the doctrine of procedural default or the federal habeas statute's restrictions on evidentiary hearings, which establish that criminal defendants forfeit claims when they pass on their opportunities to present arguments or evidence in state-court proceedings. *See Wainwright v. Sykes*, 433 U.S. 72 (1977); 28 U.S.C. § 2254(e)(2). Texas satisfied all requirements of constitutional due process when it offered Skinner the opportunity to test the DNA evidence at his trial. By spurning that opportunity, Skinner has forfeited any entitlement to test that evidence in post-conviction proceedings.

Skinner thinks that the Constitution requires Texas to accommodate his demands for post-conviction DNA testing notwithstanding this calculated decision to forego the opportunity at trial. First, Skinner notes that Texas had not yet enacted Article 64 at the time of Skinner's trial, and suggests that this absolves Skinner and his attorneys of any intent to sandbag. *See* Br. in Support of Pl.'s Mot. for Prelim. Injunc. at 32. But there were other avenues to pursue post-conviction DNA testing prior to the enactment of Article 64, including federal habeas proceedings, section 1983 actions, and attempting to pressure the local district attorney to voluntarily test the evidence. Skinner himself has invoked each of these mechanisms in his efforts to secure DNA testing. *See* Compl. ¶¶ 21–26. His suggestion that gamesmanship by criminal defendants was inconceivable at the time of his trial defies reality.

14

Second, Skinner argues that District Attorney Switzer's stance imposes an "unconstitutional condition" because it withholds the benefit of post-conviction DNA testing from criminal defendants who choose to put the prosecution to its proof rather than introduce evidence on their own behalf. *See* Br. in Supp. of Pl.'s Mot. for Prelim. Injunc. at 32–33. But Skinner cannot be serious when he asserts that "the government may not require a beneficiary to surrender a constitutional right in order to obtain a benefit from the government, even if it otherwise could have withheld the benefit altogether." *Id.* On this reasoning, all plea bargaining is unconstitutional, because it offers a benefit to criminal defendants (reduced charges or a reduced sentence) that they can obtain only by surrendering their constitutional right to put the government to its proof at trial. It would mean that Skinner himself was complicit in an attempted constitutional violation when he offered to plead guilty to first-degree murder, and surrender his constitutional right to a jury trial, in exchange for a life sentence.

Giving new meaning to the saying "no good deed goes unpunished," Skinner argues that the Constitution *forbids* States to establish procedures for post-conviction DNA testing *unless* they also permit criminal defendants to sandbag at their trials. Anything less than that would present the so-called "Hobson's choice" that Skinner claims is foreign to the Constitution.[3] Br. in Supp. of Pl.'s Mot. for

---

[3] Skinner is misusing the phrase "Hobson's choice" by equating it with a decision that involves only undesirable choices. A Hobson's choice arises when one is given the option of taking the one thing offered or nothing at all. *See, e.g.*, Bryan A. Garner, *A Dictionary of Modern Legal Usage* 404 (2d ed. 1995) ("Tradition has it that Thomas Hobson (1549–1631), a hostler in Cambridge, England, always gave his customers only one choice among his horses: whichever one was closest to the door.").

15

Prelim. Injunc. at 32. But District Attorney Switzer's resistance is not imposing an unconstitutional condition at all; it represents nothing more than a straightforward application of principles derived from the doctrines of res judicata and forfeiture. A litigant who has an opportunity to test DNA evidence at trial and foregoes that opportunity for strategic reasons cannot obtain post-conviction DNA testing without encouraging other litigants to engage in similar forms of gamesmanship, and that more than suffices to justify Switzer's refusal to yield to Skinner's demands.

Third, Skinner contends that the State should have to prove that Skinner himself "knowingly and willingly acquiesced" in his trial lawyers' decision not to test the DNA evidence. *See* Br. in Supp. of Pl.'s Mot. for Prelim. Injunc. at 34. That is demonstrably false. Lawyers are agents, and their actions are imputed to their clients regardless whether the principals "knowingly and willingly acquiesced." *See Coleman v. Thompson*, 501 U.S. 722, 753 (1991) ("[T]he attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'"); *see also People v. Rathbun*, 21 Wend. 509, 543 (N.Y. Sup. Ct. 1839) ("A prisoner . . . who defends by counsel, and silently acquiesces in what they agree to, is bound as any other principal by the act of his agent.").

What Skinner is really asking for is a holding that the Constitution requires States to resurrect the regime of *Fay v. Noia*, 372 U.S. 391 (1963), and apply it to every litigant seeking post-conviction DNA testing. Under the *Fay* regime, which the Supreme Court long ago repudiated in *Wainwright*, 433 U.S. at 87–88, a state

16

prisoner can be deemed to forfeit his federal constitutional claims only if he "deliberately bypassed" an opportunity to present them in earlier proceedings. *Id.* *Fay* represents the most generous waiver rules that the Supreme Court has ever devised; it went so far as to hold that trial counsel's deliberate, strategic decision to forego a constitutional claim at trial would not constitute a waiver in federal habeas proceedings if the client did not participate in the decision. *Fay*, 372 U.S. at 439. It also proved to be unworkable because it (unsurprisingly) encouraged criminal defendants to engage in "sandbagging" and piecemeal litigation. *See Wainwright*, 433 U.S. at 89.

This is the regime that Skinner wants this Court to impose on the States as a matter of federal constitutional command. But the notion that the Constitution's due-process clause *requires* States to apply *Fay*'s "deliberate bypass" rule to litigants seeking post-conviction DNA testing cannot be reconciled with the Supreme Court's repudiation of *Fay*, and its persistent recognition that criminal defendants forfeit their constitutional claims by failing to present them at trial. *See, e.g.*, *Wainwright*, 433 U.S. at 87–89. It cannot be that the Constitution requires states to adopt waiver rules for post-conviction DNA testing that are more generous than the procedural-default regime that the Supreme Court applies to constitutional rights in general.

Skinner notes that the federal Innocence Protection Act adopts a *Fay*-like notion of waiver, but that observation does nothing to show that Texas is violating the Constitution by adopting a more stringent forfeiture regime. He nowhere

17

explains how congressional legislation informs the meaning of the Constitution's due-process clause, other than to offer a bald assertion that Texas's decision to depart from the congressionally endorsed regime provides "powerful evidence" that the State is violating the Due Process clause by holding Skinner to the tactical decisions of his trial lawyers.  The premise behind this assertion is that any post-conviction DNA regime enacted by Congress must represent the constitutional minimum, but Congress is allowed to establish federal statutory rights that extend beyond the bare minimum required by the Constitution.  *See, e.g.*, Religious Freedom Restoration Act of 1993 (RFRA), 107 Stat. 1488, 42 U.S.C. § 2000bb *et seq.*; Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 114 Stat. 803, 42 U.S.C. § 2000cc *et seq*.

And in all events, the Innocence Protection Act adopts more generous rules of forfeiture because it contains other restrictions that prevent guilty convicts from abusing the system.  18 U.S.C. § 3600(a)(1) requires applicants seeking post-conviction DNA to assert, under penalty of perjury, that they are actually innocent of the crime of conviction.  This not only deters guilty convicts from asking for post-conviction DNA testing; it also ensures that lawyers will avoid representing clients who they know are guilty, which could expose them to criminal liability or disbarment for suborning perjury.

Skinner would not qualify for DNA testing under the standards of the federal Innocence Protection Act, because he has not submitted any sworn statement asserting his actual innocence.  He does not even allege in his Complaint that he is

actually innocent, and his filings in his Court (as best we can tell) have carefully avoided any declaration of actual innocence. There is a great distance between a statement that "Mr. Skinner has continued to declare his innocence through almost fifteen years of post-conviction appeals," *see* Br. in Support of Pl.'s Mot. for Prelim. Injunc. at 1, and a statement that "Mr. Skinner is innocent." Guilty litigants cannot utter the latter statement without exposing their lawyers to disciplinary action or criminal prosecution, yet lawyers can freely assert the former statement even when they know their client is guilty.

Article 64 does not require a sworn declaration of actual innocence for those seeking DNA testing. It requires only that the applicant submit a sworn affidavit "containing statements of fact in support of the motion." TEX. CODE CRIM. P. art. 64.01(a). So it is only to be expected that Texas would adopt stricter forfeiture rules to deter guilty criminal defendants from pursuing post-conviction DNA testing on account of their deliberate decisions not to test that evidence at trial. Either way, the Due Process clause permits States to establish mechanisms to deter abuses of the post-conviction DNA testing procedures that they extend to their convicted inmates. *See Osborne*, 129 S. Ct. at 2317 (recognizing the "need for certain conditions on access to the State's evidence," and citing with approval State laws that "deny testing to those who declined testing at trial for tactical reasons"). Imposing stringent forfeiture rules (as Texas does), or requiring applicants to

submit a sworn affidavit (as the federal statute does), each represent a constitutionally permissible means of curbing abuses.[4]

Fourth and finally, Skinner argues that *even if* he "deliberately bypassed" the opportunity to test his DNA at trial, the Constitution still requires the State of Texas to allow him post-conviction DNA testing, because even a criminal defendant's deliberate gamesmanship "should not bar him from asserting his constitutionally-protected rights."  On this view, constitutional rights are inalienable and can never be forfeited, even by a defendant who decides for strategic reasons not to raise claims at trial, with the intent of springing them later on appeal or in post-conviction proceedings.  This position cannot be reconciled with *Wainwright* or any of the Supreme Court's decisions on waiver and forfeiture, or, for that matter, with any sensible notion of how to run a criminal-justice system.[5]

## III. Skinner Cannot Establish That Switzer Violated His Constitutional Rights When DNA Testing Will Not Exonerate Him.

District Attorney Switzer is entitled to summary judgment for an additional, independent reason:  Skinner has failed to show that he might be actually innocent

---

[4] Sixteen other states plus the District of Columbia impose the same forfeiture rule as Texas, refusing DNA testing to prisoners who failed to test available evidence at trial. *See* ALA. CODE § 15-18-200(e)(2)(b); ARK. CODE ANN. § 16-112-201(a); DEL. CODE ANN. tit. 11, § 4504(a)(2); D.C. CODE § 22-4135(d)(1); GA. CODE ANN. § 5-5-41(c)(3)(B); IDAHO CODE ANN. § 19-4902(b); ME. REV. STAT. ANN. tit. 15, § 2138(10)(c); MINN. STAT. § 590.01(1a)(2); MO. REV. STAT. § 547.035(2)(3); NEV. REV. STAT. § 176.0918(3)(e); N.D. CENT. CODE § 29-32.1-15(1)(b); OHIO REV. CODE ANN. § 2953.74(B); 42 PA. CONS. STAT. § 9543.1(a)(2); UTAH CODE ANN. § 78-35a-301(4); VA. CODE ANN. § 19.2-327.1(A); W. VA. CODE ANN. § 15-2B-14(f)(6)(B); WYO. STAT. ANN. § 7-12-303(d).

[5] Skinner does not tell us whether any limits exist on his inalienability notion.  Does he believe that an Article 64 applicant who decides, for strategic reasons, to test only a subset of the available DNA evidence has a constitutional right to demand another round of post-conviction DNA testing?  And another one after that?

of the crime or that further DNA testing might exonerate him. States that establish post-conviction proceedings have no constitutional obligation to grant DNA testing to every prisoner who demands it; the Constitution allows States to limit this privilege to convicts who make plausible showings that DNA testing might exonerate them. *See Osborne*, 129 S. Ct. at 2317 (citing with approval state statutes that impose a "requirement of materiality" on those seeking post-conviction DNA testing). Skinner has made no such showing here.

Skinner does not even allege his actual innocence of these crimes in his Complaint or in any other document that he has filed with this Court. Without such an allegation, there is no disputed question of fact over whether Skinner in fact committed these murders. Because DNA testing can prove innocence only for those who are actually innocent, District Attorney Switzer is fully justified in resisting Skinner's demands for the sole reason that Skinner's actual guilt is undisputed. If there is no factual dispute over Skinner's guilt, then there is no factual dispute that post-conviction DNA testing might prove his innocence.

Even if Skinner had alleged his innocence, he would still be unable to establish a genuine issue of material fact on these issues. Mere allegations are insufficient to survive a summary-judgment motion; Skinner must produce evidence showing that post-conviction DNA testing might prove his innocence. *See* FED. R. CIV. P. 56(c). And Skinner cannot make this showing given the overwhelming and undisputed evidence of his guilt.

Skinner admits that he was in the house during the murders.  *See* Skinner Sup. Ct. Br. at 2.  He previously told Howard Mitchell that he would kill his girlfriend, Twila, if she were ever unfaithful to him.  *See Skinner v. State*, 956 S.W.2d 532, 535, n.3. (Tex. Crim. App. 1997).  After Twila and her sons, Randy and Elwin, were stabbed and strangled, Skinner did not call the police or seek help for them.  Instead, he fled to his former girlfriend Andrea Reed's house, covered in the victims' blood, wearing socks but no shoes.  At Reed's house, Skinner tried to stitch a cut wound in the palm of his hand rather than go to the hospital.  He confessed to Reed that he thought he had killed Twila and threatened to kill Reed and her children if she called the police.  *See Skinner*, 2007 WL 582808, at *2–*5.  When the police arrived at Reed's house, Skinner hid in a closet, and when told he was being arrested on outstanding warrants, he replied, "Is that all?"  *See* Trial Tr.25.361–362; Tr.27.789–790.

On direct appeal, Skinner conceded that the prosecution's evidence was sufficient to show that he killed Twila and Elwin.  *Skinner*, 956 S.W.2d at 536–537.  And prior to his trial, Skinner offered to plead guilty to first-degree murder in exchange for a life sentence.  He did not offer to plead *nolo contendere*; he offered to plead guilty, a process by which one confesses in open court to first-degree murder.  *See* Habeas Evid. Hr'g Tr. at 135.

Skinner cannot make any genuine showing that he is actually innocent, or that further DNA testing will help him establish his actual innocence.  This reason alone justifies District Attorney Switzer's refusal to accommodate Skinner's

demands for post-conviction DNA testing, and entitles her to judgment as a matter of law.

**CONCLUSION**

We respectfully request that this Court enter judgment in favor of District Attorney Switzer.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID C. MATTAX
Director of Defense Litigation


/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
Solicitor General
State Bar No. 24075463
Jonathan.Mitchell@oag.state.tx.us

ARTHUR C. D'ANDREA
Assistant Solicitor General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas  78711-2548
Tel.: (512) 936-1695
Fax: (512) 474-2697

COUNSEL FOR DEFENDANT

## CERTIFICATE OF SERVICE

I certify that on June 2, 2011, the above and foregoing document was served, via the Court's CM/ECF Document Filing System, upon the following registered CM/ECF users:

Robert C. Owen
OWEN & ROUNTREE
P.O. Box 40428
Austin, TX  78704
robowenlaw@gmail.com

Maria Cruz Melendez
SKADDEN ARPS SLATE MEAGHER & FLOM, LLP
Fourt Times Square
New York, NY  10036
maria.cruzmeledez@skadden.com

Douglas Robinson
SKADDEN ARPS SLATE MEAGHER & FLOM, LLP
1440 New York Ave. NW
Washington, DC  20005
drobinso@skadden.com

COUNSEL FOR PLAINTIFF


/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
Solicitor General

24