**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| **HENRY WATKINS SKINNER,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 2:09-CV-00281** |
| | ) | |
| **LYNN SWITZER, District Attorney** | ) | |
| **for the 31st Judicial District** | ) | |
| **of Texas,** | ) | |
| | ) | |
| *Defendant.* | ) | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND IN SUPPORT OF PLAINTIFF'S
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

ROBERT C. OWEN
Texas Bar No. 15371950
Owen & Rountree, L.L.P.
P.O. Box 40428
Austin, Texas 78704
Telephone (512) 804-2661
Fax: (512) 804-2685
robowenlaw@gmail.com

DOUGLAS G. ROBINSON
1440 New York Avenue, N.W.
Washington, D.C. 20005-2111
Telephone (202) 371-7800
Fax: (202) 661-8235
Douglas.Robinson@skadden.com

MARIA CRUZ MELENDEZ
4 Times Square
New York, New York 10036
Telephone (212) 735-2435
Fax: (212) 735-2000
Maria.CruzMelendez@skadden.com

*Counsel for Plaintiff*

Date:   July 14, 2011

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................ii

INTRODUCTION ...........................................................................................1

ARGUMENT ..................................................................................................4

I.      Mr. Skinner's Claims Are Not Barred by the Doctrine of Res Judicata. ...........................4

        A.      The Defendant Is Bound by This Court's Previous Ruling that Res Judicata Does Not Bar Consideration of Mr. Skinner's Claims. .........................................4

        B.      The Doctrine of Res Judicata Is Inapplicable Because Mr. Skinner Had No Full and Fair Opportunity to Litigate His Claims in State Court. ..........................5

        C.      The Doctrine of Res Judicata Is Likewise Inapplicable Because the State Court Judgment Violated Due Process. ...............................................................8

        D.      The Defendant Has Failed to Satisfy the Traditional Elements for Application of the Doctrine of Res Judicata......................................................11

                1.      The Defendant Has Failed to Establish That Mr. Skinner's Current § 1983 Claims Arise Out of the Same Subject Matter as Those Raised in the Previous Article 64 Proceedings. ......................................12

                2.      The Defendant Likewise Has Failed Conclusively to Establish that Mr. Skinner's § 1983 Claims Could Have Been Adjudicated During the Article 64 Proceedings. .......................................................16

        E.      The Defendant's Policy and Deterrence Arguments Are Both Baseless and Irrelevant to the Res Judicata Analysis. ...........................................................21

II.     The CCA's Application of the "No-Fault" Provision to Mr. Skinner's Case Was Unconstitutional, and Therefore Mr. Skinner, Not the Defendant, Is Entitled to Partial Summary Judgment. .........................................................................24

III.    The Defendant's Assertion that Mr. Skinner Cannot Establish that DNA Evidence Will Exonerate Him Both Is Erroneous and Does Not Present a Basis upon Which Summary Judgment May Be Granted...........................................................32

CONCLUSION...............................................................................................40

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anders v. State of California*,
　386 U.S. 738 (1967)......................................................................................22-23

*In re Beef Industry Antitrust Litig.*,
　600 F.2d 1148 (5th Cir. 1979)................................................................................38

*Beiser v. Weyler*,
　284 F.3d 665 (5th Cir. 2002).....................................................................................6

*Blackburn v. City of Marshall*,
　42 F.3d 925 (5th Cir. 1995)............................................................................. 10, 28

*Bigby v. Dretke*,
　402 F.3d 551 (5th Cir. 2005)...................................................................................20

*Bordenkircher v. Hayes*,
　434 U.S. 357 (1978)..................................................................................................37

*Brady v. United States*,
　397 U.S. 742 (1970)..................................................................................................25

*Craine v. Alexander*,
　756 F.2d 1070 (5th Cir. 1985).................................................................................23

*Dist. Att'y's Office v. Osborne*,
　129 S. Ct. 2308 (2009)..................................................................... 18, 23, 26, 28,
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　29, 31, 36

*Dolan v. City of Tigard*,
　512 U.S. 863 (1994)..................................................................................................27

*Florida v. Nixon*,
　543 U.S. 175 (2004)..........................................................................................25, 26

*Floyd v. Amite Cnty. School Dist.*,
　495 F. Supp. 2d 619 (S.D. Miss. 2007)..................................................................6

*Gardner v. Florida*,
　430 U.S. 349 (1977)....................................................................................................9

*Gjellum v. City of Birmingham*,
829 F.2d 1056 (11th Cir. 1987) ................................................................. 5

*Godschalk v. Montgomery Cnty. Dist. Att'y's Office*,
177 F. Supp. 2d 366 (E.D. Pa. 2001) ...................................................... 36

*Golino v. City of New Haven*,
950 F.2d 864 (2d Cir. 1991) ..................................................................... 6

*Harper Macleod Solicitors v. Keaty & Keaty*,
260 F.3d 389 (5th Cir. 2001) .................................................................... 5

*Heck v. Humphrey*,
512 U.S. 477 (1994) ............................................................................... 23

*Herbst v. Cook*,
260 F.3d 1039 (9th Cir. 2001) .............................................................. 6-7

*Kremer v. Chem. Constr. Corp.*,
456 U.S. 461 (1982) ............................................................................. 5, 8

*Krison v. Nehls*,
767 F.2d 344 (7th Cir. 1985) .................................................................... 5

*McCallon v. Thomas*,
No. 02-573, 2003 WL 228991 (E.D. La. Jan. 30, 2003) ........................ 25

*Rhoades v. Penfold*,
694 F.2d 1043 (5th Cir.1983) ....................................................... 14, 14-15

*Sandstrom v. Montana*,
442 U.S. 510 (1979) .......................................................................... 10, 26

*Sawyer v. Smith*,
497 U.S. 227 (1990) ........................................................................... 24-25

*Singleton v. Comm'n of Internal Revenue*,
439 U.S. 940 (1978) ................................................................................. 7

*Skinner v. Switzer*,
No. 2:09-CV-0281, 2010 WL 273143 (N.D. Tex. Jan 20, 2010) ............... 4

*Skinner v. Switzer*,
130 S. Ct. 3323 (2010) ........................................................................... 21

*Skinner v. Switzer*,
    131 S. Ct. 1289 (2011)............................................................ 4, 21, 23, 37

*Test Masters Educ. Servs., Inc. v. Singh*,
    428 F.3d 559 (5th Cir. 2005) ................................................................17

*United States v. Goodwin*,
    457 U.S. 368 (1982)...............................................................................22

*United States v. Henry*,
    709 F.2d 298 (5th Cir. 1983)..................................................................22

*United States v. Kresdorn*,
    693 F.2d 1221 (5th Cir. 1982)................................................................22

*United States v. Scott*,
    450 F.3d 853 (9th Cir. 2006)..................................................................28

*Wainwright v. Sykes*,
    433 U.S. 72 (1977)................................................................................25

*In re Winship*,
    397 U.S. 358 (1970)................................................................ 10, 26, 27

## STATE CASES

*Amstadt v. United States Brass Corp.*,
    919 S.W.2d 644 (Tex. 1996) ...................................................... 11, 13-14

*Ex parte Baker*,
    185 S.W.3d 894 (Tex. Crim. App. 2006) (em banc) ..................................3

*Barr v. Resolution Trust Corp.*,
    837 S.W.2d 627 (Tex. 1992) ...................................................... 11, 12, 14

*Briggs v. State*,
    789 S.W.2d 918 (Tex. Crim. App. 1990) (en banc) ................................19

*Chavez v. State*,
    132 S.W.3d 509 (Tex. App. - Houston [1st Dist.] 2004, no pet.)..............18

*Cherokee Water Co. v. Freeman*,
    145 S.W.3d 809 (Tex. App. - Texarkana 2004, pet. denied) .....................12

*Chowdhury v. State*,
No. 14-02-00176-CR, 2003 WL 1738414 (Tex. App. - Houston Apr. 3, 2003) .........37

*Collins v. Guinn*,
102 S.W.3d 825 (Tex. App. - Texarkana 2003, pet. denied) .....................................17

*Cormier v. State*,
No. 10-04-00236-CR, 2006 WL 408411 (Tex. App. - Waco 2006, no pet.) ..............19

*Curry v. State*,
186 S.W. 3d 39 (Tex. App. - Houston [1st Dist.] 2005, no pet.) ..............................19

*Dace v. Dace*,
No. 01-09-00758-CV, 2011 WL 1326217 (Tex. App. – Houston April 7,
2011, no pet.) ...........................................................................................................13

*Evans v. Eldridge*,
No. 13-08-00634-CV, 2009 WL 2462893 (Tex. App. – Corpus Christi Aug.
13, 2009, pet. denied) ..........................................................................................18-19

*Franklin v. Rainey*,
556 S.W.2d 583 (Tex. Civ. App. - Dallas 1977, no writ) .........................................14

*GE Capital Corp. v. Hunt Cnty. Appraisal Dist.*,
No. 05-97-02192-CV, 2000 WL 348562 (Tex. App. - Dallas Apr. 5, 2000, no
pet.) ..........................................................................................................................15

*Hernandez v. Del Ray Chemical Int'l, Inc.*,
56 S.W.3d 112 (Tex. App. - Houston [14th Dist.] 2001, no pet.) .......................13, 17

*Highlander Crusader Offshore Partners v. Motient Corp.*,
281 S.W.3d 237 (Tex. App. - Dallas 2009, pet. denied) ...........................................13

*Ingersoll-Rand Co. v. Valero Energy Corp.*,
997 S.W.2d 203 (Tex. 1999) ...................................................................................17

*Kenneco Energy, Inc. v. Johnson and Higgins of Texas, Inc.*,
921 S.W.2d 254 (Tex. App. - Houston [1st Dist.] 1995) ...........................................11

*Loyd v. ECO Res., Inc.*,
956 S.W.2d 110 (Tex. App. - Houston [14th Dist.] 1997, no pet.), *abrogated
on another issue by Clear Lake City Water Auth. v. Friendswood Dev. Comp.,
Ltd.*, 256 S.W.3d 735 (Tex. App. -Houston 2008) ...................................................17

*Maxson v. Travis Cnty. Rent Account*,
21 S.W.3d 311 (Tex. App. - Austin 1999, pet. Dism'd by agr.) .................................12

*McGowen v. Huang*,
    120 S.W.3d 452 (Tex. App. - Texarkana 2003, pet. denied) ....................................11

*Musgrave v. Owen*,
    67 S.W.3d 513 (Tex. App. - Texarkana 2002, no pet.)........................... 11, 14, 17, 18

*Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship*,
    323 S.W.3d 203 (Tex. App. - El Paso 2010)...........................................................17

*Reger v. State*,
    222 S.W.3d 510 (Tex. App. - Fort Worth 2007, pet. ref'd).......................................20

*Skinner v. State*,
    122 S.W.3d 808 (Tex. Crim. App. 2003)..............................................................3, 30

*Skinner v. State*,
    293 S.W.3d 196 (Tex. Crim. App. 2009)..............................................................3, 30

*Stephens v. Dallas Area Rapid Transit*,
    50 S.W.3d 621 (Tex. App. - Dallas 2001, pet. denied)............................................14

*Ex parte Suhre*,
    185 S.W.3d 898 (Tex. Crim. App. 2006)..................................................................3

*Sutherland v. Cobern*,
    843 S.W.2d 127 (Tex. App. - Texarkana 1992, writ denied)....................................11

*Texas Employers' Ins. Ass'n v. Tobias*,
    669 S.W.2d 742 (Tex. App. - San Antonio 1983, writ ref'd n.r.e.) ...........................17

*Ex parte Tomlinson*,
    295 S.W.3d 412 (Tex. App. - Corpus Christi 2009)..................................................37

*Ex parte Tuley*,
    109 S.W.3d 388 (Tex. Crim. App. 2002)................................................................37

*Watson v. State*,
    96 S.W.3d 497 (Tex. App. - Amarillo 2002, pet. ref'd)............................................19

# RULES AND STATUTES

Certain Pretrial and Post-Trial Procedures and Testing in a Criminal Case, 82d
   Leg., 2011 R.S., ch. 14 § 5, 2011 Tex. Sess. Law Serv. Ch. 278 (H.B. 1573)
   (Vernon) (amending Tex. Code Crim. Proc. Ann. art. 64.01) ...........................2-3, 30

Fed. R. Civ. P. 26(d)..............................................................................................2

Fed. R. Civ. P. 56(c)............................................................................................38

Sup. Ct. R. 10 .......................................................................................................7

Tex. Code Crim. Proc. Ann. art. 64.01(b) (Vernon Supp. 2010), repealed June 17,
   2011 ..................................................................................................................2

Tex. Code Crim. Proc. Ann. art. 64.03(a) (Vernon Supp. 2010) ........................ 15, 30, 38

Tex. R. Evid. 705(b) ............................................................................................9

Tex. R. Evid. 705(c) ............................................................................................9

Tex. R. App. P. 79.1 .............................................................................................7

Tex. R. App. P. 79.2 .............................................................................................7

Tex. R. App. P. 79.5 .............................................................................................7

Tex. R. Evid. 705(b) ............................................................................................9

Tex. R. Evid. 705(c) ............................................................................................9

# OTHER SOURCES

50 C.J.S. Judgments § 1064 (2011) .....................................................................6

Brief in Support of Plaintiff's Motion for Preliminary Injunction,
   *Skinner v. Switzer*, No. 2:09-CV-00281 (N.D. Tex. Nov. 30, 2009) ......................8, 9

Brief for Current and Former Prosecutors as *Amici Curiae*,
   *Dist. Att'y's Office v. Osborne*, 129 S. Ct. 2308 (2009) (No. 08-6) ......................36-37

Brief for Individuals Exonerated by Postconviction DNA Testing as *Amici
   Curiae*, *Dist. Att'y's Office v. Osborne*, 129 S. Ct. 2308 (2009) (No. 08-6) ..............37

Brief of Petitioner,
*Skinner v. Switzer*, 131 S. Ct. 1289 (2011) (No. 09-9000) ......................................21

Brandon L. Garrett, *Judging Innocence*,
108 Columbia Univ. L. Rev. 55, 109 (2008)............................................................36

Respondent's Brief in Opposition to Petition for Writ of Certiorari,
*Skinner v. Switzer,* 130 S. Ct. 3323 (2010) (No. 09-9000) ......................................33
Respondent's Opposition to Application for Stay of Execution,
*Skinner v. Switzer*, 130 S. Ct. 1948 (2010) (No. 09-9000) (09A743) .................32-33

Restatement (Second) of Judgments 28 (1980) .................................................................5

Sara Rimer, *DNA Testing In Rape Cases Frees Prisoner After 15 Years*,
N.Y. Times, Feb. 15, 2002, at A12..........................................................................36

Supreme Court of the United States, The Justices' Caseload,
www.supremecourt.gov/about/justicecaseload.aspx (last visited July 14,
2011) ......................................................................................................................7

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| **HENRY WATKINS SKINNER,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| vs. | ) | **Civil Action No. 2:09-CV-00281** |
| | ) | |
| **LYNN SWITZER, District Attorney** | ) | |
| **for the 31st Judicial District** | ) | |
| **of Texas,** | ) | |
| | ) | |
| *Defendant.* | ) | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND IN SUPPORT OF PLAINTIFF'S
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

In this brief, Plaintiff Henry Watkins Skinner (the "Plaintiff," or "Mr. Skinner") opposes

the Motion for Summary Judgment filed on behalf of Defendant Lynn Switzer (the "Defendant").

Moreover, in Section II, the Plaintiff explains not only why the Court should deny summary

judgment to Defendant, but should grant partial summary judgment for Mr. Skinner.

**INTRODUCTION**

The Defendant urges summary judgment on three grounds: (1) that Mr. Skinner's claims

are barred by the doctrine of res judicata; (2) that the constitution permits a State to refuse post-

conviction DNA testing to a prisoner solely on the basis that he failed to ask for such testing

prior to trial; and (3) that Mr. Skinner is so obviously guilty that no amount of DNA testing

would exonerate him.  This brief, following that same order, will explain why each of those

arguments is wholly without merit.

In addition, Mr. Skinner has moved for partial summary judgment on his first claim for relief—that his due process rights under the U.S. Constitution were violated when the Texas Court of Criminal Appeals (the "CCA") denied him post-conviction DNA testing.  Such a cross-motion is appropriate because, if the Defendant fails on her second ground for summary judgment—that the so-called "no fault" provision of Texas's post-conviction DNA testing statute, former Tex. Code Crim. Proc. Ann. art. 64.01(b)(1) (Vernon Supp. 2010), repealed June 17, 2011, could constitutionally be applied to deny Mr. Skinner post-conviction testing—then by necessity the opposite must be true.  Namely, application of the no-fault provision to Mr. Skinner's case was *un*constitutional, and Mr. Skinner prevails as a matter of law on his first claim.  Consequently, the discussion in this brief of the flaws in Defendant's second ground for summary judgment necessarily supports Mr. Skinner's cross-motion.

Before addressing the merits of the competing summary judgment motions, however, we direct the Court's attention to two matters that it may find significant in determining, as an initial matter, whether it has subject matter jurisdiction.  First, Mr. Skinner has moved under Fed. R. Civ. P. 26(d) for permission to serve the Defendant with limited interrogatories designed to determine whether the DNA material Mr. Skinner seeks to test still exists, or, if it does exist and the chain of custody has been properly maintained, whether its condition will permit DNA testing.  As stated in Mr. Skinner's brief in support of that motion, there are reasons to doubt whether the evidence is testable or even exists at this point.  If it is not, this case may be moot.

Second, as the Court may be aware, the specific provision of the Texas post-conviction DNA testing statute on which the CCA relied in its September 2009 decision denying Mr. Skinner testing—the "no-fault" provision—just weeks ago was removed from the statute by the Texas Legislature.  *See* Certain Pretrial and Post-Trial Procedures and Testing in a Criminal

Case, 82d Leg., 2011 R.S., ch. 14 § 5, 2011 Tex. Sess. Law Serv. Ch. 278 (H.B. 1573) (Vernon) (amending Tex. Code Crim. Proc. Ann. art. 64.01).  The bill repealing the "no-fault" provision was signed into law by Governor Perry on June 17, and becomes effective September 1, 2011. Pursuant to this reform, no prisoner who files a motion for post-conviction DNA testing under Article 64 after September 1 may be barred from obtaining DNA testing simply because he opted not to seek such testing before trial.  *Id.*

The CCA has made it clear that there is no bar to a prisoner's filing successive Article 64 motions.  *See, e.g., Ex parte Suhre*, 185 S.W.3d 898, 899 (Tex. Crim. App. 2006); *Ex parte Baker,* 185 S.W.3d 894, 897 (Tex. Crim. App. 2006) (en banc).  Indeed, the CCA tacitly followed that rule when it considered Mr. Skinner's second Article 64 motion on the merits. After September 1, then, presumably nothing would preclude Mr. Skinner from filing, and having heard on the merits another Article 64 motion seeking a ruling on those aspects of his appeal of his second Article 64 motion not reached by the CCA in its 2009 decision.[1]  In particular, Mr. Skinner would be able to seek a decision on whether the CCA erred in its 2003 decision on his *first* Article 64 motion,[2] or whether that 2003 judgment in any event has been overtaken by subsequently developed facts.  Whether Mr. Skinner will move to dismiss this action and file a third Article 64 motion in the state courts depends upon whether Defendant maintains that there is any remaining vitality to the CCA's 2003 ruling on Mr. Skinner's first Article 64 motion, despite the fact that the CCA expressly declined to rely on that earlier ruling

---

[1] The CCA noted that it faced "a number of interesting legal issues" in Mr. Skinner's appeal from the trial court's denial of his second Article 64 motion, including whether the court's ruling on Mr. Skinner's first Article 64 motion foreclosed a second motion.  *See Skinner v. State*, 293 S.W.3d 196, 200 (Tex. Crim. App. 2009).  It "cho[]se to address," however, only whether Mr. Skinner's failure to request DNA testing prior to trial barred him forever from obtaining post-conviction testing under the now-repealed "no-fault" provision.  *Id.*

[2] *Skinner v. State*, 122 S.W.3d 808 (Tex. Crim. App. 2003).

3

when it denied Mr. Skinner's second motion in 2009.  If Defendant does take the  position that

the CCA's 2003 ruling was not superseded by its 2009 judgment, then at a minimum the issue of

whether that first CCA ruling violated Mr. Skinner's due process rights remains to be litigated

here.[3]

## ARGUMENT

**I.    MR. SKINNER'S CLAIMS ARE NOT BARRED BY THE DOCTRINE OF RES JUDICATA.**

### A.    The Defendant Is Bound by This Court's Previous Ruling that Res Judicata Does Not Bar Consideration of Mr. Skinner's Claims.

In an ironic attempt to take what she has condemned as the forbidden "second bite at the

apple," the Defendant moves this Court to hold that the claims advanced in Mr. Skinner's

complaint are barred by res judicata, despite the fact that this Court has already ruled to the

contrary after full briefing of this very issue.  *See Skinner v. Switzer*, No. 2:09-CV-0281, 2010

WL 273143, at *7 (N.D. Tex. Jan 20, 2010)  ("If . . . plaintiff's claims are limited to those

identified in his complaint, then neither *res judicata* nor *Rooker-Feldman* bar the consideration

of the case."), *aff'd*, 363 F. App'x 302 (5th Cir. 2010), *rev'd* 131 S. Ct. 1289 (2011) .  Mr. Skinner

has consistently maintained, and since this Court's original ruling the Supreme Court has

expressly acknowledged, that his complaint "challenges, as denying him procedural due process,

Texas's postconviction DNA statute 'as construed' by the Texas courts."  *Skinner v. Switzer*, 131

S. Ct. 1289, 1296 (2011).  The Defendant argued on appeal that this action is barred by the

*Rooker-Feldman* doctrine, but she did not appeal this Court's rejection of her res judicata

---

[3] While the Defendant contends in Section III of her summary judgment brief that Mr. Skinner's rights were not violated because DNA testing would not prove his innocence, she makes no effort to defend the rationale by which the CCA reached that conclusion in its 2003 decision on Mr. Skinner's first motion.  Nor could she, given the complete misunderstanding of the GeneScreen test results on which the CCA's opinion rests.

argument. That ruling is the law of this case, and the Defendant offers no reason to justify this Court's revisiting its prior ruling on the issue.

### B. The Doctrine of Res Judicata Is Inapplicable Because Mr. Skinner Had No Full and Fair Opportunity to Litigate His Claims in State Court.

Even if the Court were inclined to revisit the Defendant's res judicata argument, it should once again hold that issue preclusion does not bar Mr. Skinner's § 1983 claims. It is well established that "[t]raditional rules of preclusion as adopted in federal case law—whether under the doctrine of collateral estoppel or res judicata—require that the party to be estopped from re-litigating a claim have had a full and fair opportunity to litigate the issue." *Harper Macleod Solicitors v. Keaty & Keaty*, 260 F.3d 389, 395 (5th Cir. 2001) (citing *Parklane Hoisery Co. v. Shore*, 439 U.S. 322, 326 (1979)); *see also Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481 n.22 (1982) (as with issue preclusion, the doctrine of claim preclusion is subject to the requirement that a plaintiff was afforded in the first proceeding a full and fair opportunity to litigate his claims). Indeed, even before determining whether a claim is precluded under state law, a federal court must first "determine whether, as a matter of federal law, [plaintiff] was afforded 'a full and fair opportunity to litigate' his claim in the state court proceedings." *Krison v. Nehls*, 767 F.2d 344, 348 (7th Cir. 1985) (citing *Kremer*, 456 U.S. at 482) ("Where federal rights are at issue, [the case law] underscore[s] the vital role of federal preclusion rules in assuring that binding the litigant to a prior determination comports with federal constitutional and statutory requirements even when the federal court is also bound to look to state preclusion law.)"; *see also Gjellum v. City of Birmingham*, 829 F.2d 1056, 1064 (11th Cir. 1987).

A party cannot be said to have enjoyed a full and fair opportunity to litigate his claims unless he had a meaningful vehicle through which to do so. Accordingly, "[i]f a litigant, as a matter of law, has no right to appellate review, then he has not had a full and fair opportunity to

litigate and the issue is not precluded." *Beiser v. Weyler*, 284 F.3d 665, 673 (5th Cir. 2002) (citing Restatement (Second) of Judgments § 28 (1982)); *see also Floyd v. Amite Cnty. Sch. Dist.*, 495 F. Supp. 2d 619, 626-27 (S.D. Miss. 2007) (finding that res judicata did not bar plaintiff's federal claim where state court proceeding did not permit review of plaintiff's due process claims).  Res judicata does not apply where "the nature of the prior hearing carries procedural limitations that would not be present at a later hearing." 50 C.J.S. *Judgments* § 1064 (2009); *see also Golino v. City of New Haven*, 950 F.2d 864, 869-70 (2d Cir. 1991) (affirming denial of motion seeking summary judgment on res judicata grounds where state proceeding imposed procedural limitations not present in a federal § 1983 action).

The Defendant's assertion that Mr. Skinner had "ample opportunity" in the course of the Article 64 proceedings in state court to raise and develop his constitutional due process arguments (Def. Sum. Judg. Br. at 8) ignores the pivotal fact that the constitutional violations at issue here did not arise until the CCA issued its *decision* on each of Mr. Skinner's Article 64 motions.  Until that point, the proceedings on both motions dealt solely with whether Mr. Skinner complied with the requirements of Article 64—issues of state law entirely.  Thus, the only vehicles Mr. Skinner had available to him to argue that the decisions themselves violated his constitutional rights were a motion for rehearing directed to the CCA itself and/or a petition for certiorari directed to the Supreme Court of the United States.  Neither of those avenues for relief provided the "full and fair opportunity to litigate" that is a predicate to barring a claim on res judicata grounds.

As for the rehearing route, the CCA's review of such motions is purely discretionary, and they are typically met with perfunctory denials.  *Cf. Herbst v. Cook*, 260 F.3d 1039, 1043-44 (9th Cir. 2001) (finding that a motion for reconsideration was "inadequate as an opportunity to

respond" to a sua sponte dismissal of habeas petition because, *inter alia,* the bar for success on a motion to reconsider was higher).  Indeed, the CCA may "deny the right to file [a motion for rehearing] altogether."  Tex. R. App. P. 79.1.  Moreover, a party is limited in her ability to explain the grounds for relief.  *See* Tex. R. App. P. 79.2 (a motion for rehearing must be "brief[]").  In addition, the CCA "will not consider a second motion for rehearing after rehearing is denied."  Tex. R. App. P. 79.5.  Thus, it is doubtful that the court would even have entertained a second motion for rehearing of its 2003 decision after it denied Mr. Skinner's first rehearing motion.

Review of a state court decision via writ of certiorari from the Supreme Court is even more uncertain and unlikely.  "Review on a writ of certiorari is not a matter of right, but of judicial discretion."  Sup. Ct. R. 10.  Indeed, the writ "will be granted only for compelling reasons" and "is rarely granted when the asserted error consists of erroneous factual findings or the misapplication of a properly stated rule of law."  *Id.*  As Justice Stevens has written:

> A variety of considerations underlie denials of the writ, and as to the same petition different reasons may lead different Justices to the same result. This is especially true of petitions for review on writ of certiorari to a State court.

*Singleton v. Comm'r of Internal Revenue*, 439 U.S. 940, 942-43 (1978) (Stevens, J., respecting the denial of petition for writ of certiorari).  The odds that a petition for writ of certiorari will be granted are less than one percent.  In recent terms, the Court has granted plenary review in only about 100 of the more than 10,000 petitions filed.  *See* Supreme Court of the United States, The Justices' Caseload, www.supremecourt.gov/about/justicecaseload.aspx (last visited July 14, 2011).

Hence, where a federal issue arises for the first time with the issuance of a decision by the CCA—as it did here—the mere possibility that that issue might be reviewed via a motion for

rehearing directed to the CCA, or a petition for writ of certiorari addressed to the Supreme Court, does not constitute meaningful review for the purposes of res judicata. Accordingly, the doctrine of res judicata does not bar Mr. Skinner's claims.

### C. The Doctrine of Res Judicata Is Likewise Inapplicable Because the State Court Judgment Violated Due Process.

Preclusion principles will not bar a claim where the original state court judgment violated the Constitution. "A State may not grant preclusive effect in its own courts to a constitutionally infirm judgment, and other state and federal courts are not required to accord full faith and credit to such a judgment." *Kremer*, 456 U.S. at 482. Accordingly, where a state court judgment does not comport with due process, it cannot impose "[any] constitutionally recognizable preclusion at all." *Id.* at 482-83. Indeed, the Supreme Court has noted that "'[r]edetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation.'" *Id.* at 481 (quoting *Montana v. United States*, 440 U.S. 147, 164 n.11 (1979)).

By their very nature, Mr. Skinner's § 1983 due process claims foreclose the application of res judicata principles here. During the proceedings related to Mr. Skinner's first Article 64 motion for DNA testing,[4] the CCA, in contravention of due process, arbitrarily relied on erroneous factual allegations and a laboratory report that had never been subjected to scrutiny or accepted as reliable in an adversarial proceeding. Where a court fails to provide a prisoner the

---

[4] As noted above, the most reasonable conclusion is that the first CCA decision, in 2003, was superseded by the second decision in 2009, because the latter decision declined to rule on the continuing validity of the first decision and instead rested its refusal to order DNA testing entirely on the no-fault provision. *See* n.1, *supra*, and accompanying text. Mr. Skinner addresses that decision here only because it is not clear from the Defendant's brief in support of her summary judgment motion whether or to what extent, if any, she claims that the first CCA decision, as well as the second, has preclusive effect. For a detailed description of the proceedings surrounding Mr. Skinner's first motion for DNA testing, *see* Mr. Skinner's Brief in Support of Plaintiff's Motion for Preliminary Injunction at 11-15, *Skinner v. Switzer*, No. 2:09-CV-00281 (N.D. Tex. Nov. 30, 2009).

opportunity to "deny or explain" the contents of a report submitted against him by the State that will have an effect on his conviction or sentence, such failure violates due process.  *Cf. Gardner v. Florida*, 430 U.S. 349, 362 (1977) (finding denial of due process where trial court sentenced defendant to death "on the basis of information which [the defendant] had no opportunity to deny or explain").  Mr. Skinner was never afforded the opportunity to test the reliability of the laboratory report that formed the basis of the CCA's denial of his first motion for DNA testing.[5]  The CCA's decision was, therefore, constitutionally infirm and should not be given preclusive effect on Mr. Skinner's current claims.

The judgment arising from Mr. Skinner's second motion for DNA testing was likewise constitutionally infirm.[6]  In that decision, the CCA abandoned its previous rationale for denying Mr. Skinner relief and, instead, held that his motion was barred by the "no-fault" provision.  That provision, at least as applied in Mr. Skinner's case,[7] violated due process by creating an unconstitutional condition—forcing a criminal defendant to choose at trial between relying upon the prosecution's burden of proof (and the constitutional presumption of innocence) and availing

---

[5] The CCA's reliance on the untested GeneScreen report also violated the Texas Rules of Evidence.  Rule 705(b) provides that, "[p]rior to the expert giving the expert's opinion or disclosing the underlying facts or data, a party against whom the opinion is offered upon request in a criminal case shall . . . be permitted to conduct a *voir dire* examination directed to the underlying facts or data upon which the opinion is based. This examination shall be conducted out of the hearing of the jury."  Tex. R. Evid. 705(b).  Further, "[i]f the court determines that the underlying facts or data do not provide a sufficient basis for the expert's opinion under Rule 702 or 703, the opinion is inadmissible." Tex. R. Evid. 705(c).

[6] For a detailed description of the proceedings surrounding Mr. Skinner's second motion for DNA testing, Mr. Skinner refers the Court to the Brief in Support of Plaintiff's Motion for Preliminary Injunction at 15-19, *Skinner*, No. 2:09-CV-00281.

[7] In 1995, the year of Mr. Skinner's trial, Texas had not yet enacted a post-conviction DNA testing statute. Consequently, the CCA's determination that its construction of the "no-fault" provision is necessary to prevent defendants from "gaming the system" (*i e.*, to discourage a defendant from purposefully foregoing testing at trial while intending to avail himself of Article 64 if he is convicted) not only does nothing to cure the due process problems with that approach, but is also squarely unwarranted in the unique circumstances of Mr. Skinner's case. Clearly, Mr. Skinner did not forego testing in hopes of winning a future strategic advantage because there was no statute in place creating any such possible future benefit, and the CCA's assumption that he did so is itself arbitrary and fundamentally unfair.

himself of the protections afforded by the state-created entitlements under Article 64.  *See* Section II, *infra.*  Forcing a criminal defendant like Mr. Skinner to make such a choice offends the longstanding principle that the government may not require a claimant  to surrender a constitutional right in order to obtain a benefit from the government, even if the government could have withheld the benefit altogether.  *See, e.g.*, *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (explaining that the government "'may not deny a benefit to a person on a basis that infringes his constitutionally protected interests'") (citation omitted).  Given that the State, not the defendant, bears the burden of proof at trial, *see, e.g.*, *Sandstrom v. Montana*, 442 U.S. 510, 520-21 (1979); *In re Winship*, 397 U.S. 358, 364 (1970), and that a criminal defendant is under no obligation to present evidence at trial or incriminate himself, the CCA's construction of the no-fault provision cannot withstand constitutional scrutiny.  The presumption that a defendant is innocent until the government proves his guilt beyond a reasonable doubt is one of the pillars of our judicial system and a basic tenet of ordered liberty.  *See Winship*, 397 U.S. at 362 ("'This notion [of the government's burden of proof]—basic in our law and rightly one of the boasts of a free society—is a requirement and a safeguard of due process of law in the historic, procedural content of "due process."'") (citation omitted).  It offends due process to condition the availability of an important state-created entitlement on the defendant's willingness to forfeit the presumption of innocence and shoulder the burden of proof through mandatory DNA testing at trial.[8]

Accordingly, because the judgments handed down by the CCA did not afford Mr. Skinner adequate procedural due process, the doctrine of res judicata is inapplicable.

---

[8] This argument, that the CCA's decisions violated procedural due process, is developed more fully in Section II, *infra.*

### D.    The Defendant Has Failed to Satisfy the Traditional Elements for Application of the Doctrine of Res Judicata.

To prevail on the defense of res judicata, a defendant must conclusively prove that: (1) a prior judgment was rendered by a court of competent jurisdiction; (2) there was a final judgment on the merits; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both suits.  *See Sutherland v. Cobern*, 843 S.W.2d 127, 130 (Tex. App. –Texarkana 1992, writ denied).  Even where the first three elements are met, res judicata will bar a claim only if a plaintiff "seek[s] to relitigate the matter which was the subject of the earlier litigation," *Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 653 (Tex. 1996), or seeks to litigate subsequent claims that "arise out of the same subject matter and that could have been litigated in the prior action."[9]  *Id.* at 652; *see also Barr v. Resolution Trust Corp. ex rel Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628, 631 (Tex. 1992).

The Defendant has conceded that Mr. Skinner is not attempting to relitigate an issue previously adjudicated in state court.  (*See* Def. Sum. Judg. Br. at 8) (arguing that Mr. Skinner chose not to "raise or develop" his constitutional arguments in the state court proceedings).)  She argues instead that Mr. Skinner *could have* raised his current claims during his Article 64 proceedings.  (*Id.* at 4, 8.)  The Defendant also asserts that Mr. Skinner's Article 64 motions and his § 1983 lawsuit arise out of the same subject matter.  (*Id.* at 8-9.)  To prevail on her motion,

---

[9] Despite the Defendant's criticism and protestations to the contrary (*see* Def. Sum. Judg. Br. at 8-9), Texas courts frequently use the "same nucleus of operative facts" test, either alone or in conjunction with the "same subject matter" phrasing, when making res judicata determinations.  *See, e.g., Musgrave v. Owen*, 67 S.W.3d 513, 519 (Tex. App. – Texarkana 2002, no pet.) (stating that in any res judicata analysis, "[t]he main concern is whether the cases share the same nucleus of operative facts") (citation omitted); *Kenneco Energy, Inc. v. Johnson & Higgins of Texas, Inc.*, 921 S.W.2d 254, 260 (Tex. App. – Houston [1st Dist.] 1995) ("To determine whether the same claim or cause of action is involved in two actions, the court applies the transactional approach, in which the critical issue is whether the two actions were based on the same nucleus of operative fact."); *McGowen v. Huang*, 120 S.W.3d 452, 460 n.5 (Tex. App. – Texarkana 2003, pet. denied) (noting that when making a res judicata determination, "[e]ssentially, this Court must determine whether the cases share the same nucleus of operative facts").  Any distinction is inconsequential, however, as the Defendant's res judicata defense fails under either construction.

11

the Defendant bears the burden of conclusively proving this to be so. *See, e.g., Maxson v. Travis Cnty. Rent Account*, 21 S.W.3d 311, 316 (Tex. App. – Austin 1999, pet. dism'd by agr.) ("Because Defendants raised res judicata as an affirmative defense at the summary judgment stage, they bore the burden of proving each of these elements conclusively."). The Defendant cannot meet this burden.

> 1. The Defendant Has Failed to Establish That Mr. Skinner's Current § 1983 Claims Arise Out of the Same Subject Matter as Those Raised in the Previous Article 64 Proceedings.

The Defendant's explication of the res judicata doctrine suffers from several defects. First, she improperly sunders the two-pronged analysis that governs the determination whether a current claim could have been raised during a prior proceeding. More precisely, the Defendant's brief suggests that this Court must dismiss Mr. Skinner's claim if it finds *either* that he could have raised the current claims during the previous proceedings *or* that the claims arise out of the same subject matter. (*See* Def. Sum. Judg. Br. at 5-8, 9-10 (treating, as separate bases for applying res judicata, the issue of whether Mr. Skinner could have brought his action in state court and whether his current federal claim and state-court motion related to the same subject matter).) However, a defendant seeking to prevail on res judicata grounds must prove *both* of these elements . *See, e.g., Barr*, 837 S.W.2d at 628 (res judicata precludes a party from bringing in a subsequent suit "*related* matters that, with the use of diligence, should have been litigated in the prior suit") (emphasis added); *see also id.* at 631; *Cherokee Water Co. v. Freeman*, 145 S.W.3d 809, 812-13 (Tex. App. – Texarkana 2004, pet. denied) ("Res judicata . . . prevents the relitigation of . . . related matters that should have been litigated in a prior suit."). As explained below, the Defendant fails to meet that dual burden.

Second, the Defendant ignores the key means by which courts must evaluate whether two separate claims arise out of the same subject matter, namely, by analyzing and comparing the factual basis for each claim.  Discounting this focal point of the analysis, the Defendant suggests that simply because both the previous Article 64 proceedings and Mr. Skinner's § 1983 claims relate to Mr. Skinner's access to DNA evidence, his claims are precluded.  (*See* Def. Sum. Judg. Br. at 9-10 (claiming that both the Article 64 and § 1983 lawsuits arise out of Skinner's rejected demands for post-conviction DNA testing).)  That alone, however, falls far short of meeting her affirmative burden of proving conclusively that Mr. Skinner's previous Article 64 proceeding and his current § 1983 claim arise out of the same subject matter as defined under Texas law.  The mere fact that a subsequent lawsuit seeks the same relief as a previous lawsuit has little bearing on whether the subsequent claim is barred by res judicata.  *See, e.g.*, *Highlander Crusader Offshore Partners, L.P. v. Motient Corp.*, 281 S.W.3d 237, 242-43 (Tex. App. – Dallas 2009, pet. denied) (stating that the determination of whether two claims arise from the same transaction is not based on the types of relief which are sought); *Dace v. Dace*, No. 01–09–00758–CV, 2011 WL 1326217, at *6 (Tex. App. – Houston [1st Dist.] Apr. 7, 2011, no pet.) (noting that the defining factor for res judicata purposes "is not whether the same remedy is sought").

Instead, Texas courts have consistently found that a review of the facts that actually support each claim is essential to any res judicata analysis:

> A determination of what constitutes the subject matter of a suit *necessarily* requires an examination of the *factual basis* of the claim or claims in the prior litigation.  It also requires an analysis of the factual matters that *make up the gist of the complaint*, without regard to the form of action.

*Hernandez v. Del Ray Chem. Int'l, Inc.*ˎ 56 S.W.3d 112, 115-16 (Tex. App. – Houston [14th Dist.] 2001, no. pet.) (emphasis added) (quoting *Barr*, 837 S.W.2d at 630).  *See also Amstadt*, 919 S.W.2d at 653 ("To determine whether a prior and later lawsuit involve the same basic

subject matter, we focus on the factual basis of the complaint."); *Barr*, 837 S.W.2d at 631 (res judicata barred the plaintiff's claim because both suits required proof of the same facts); *Musgrave v. Owen*, 67 S.W.3d 513, 519 (Tex. App. – Texarkana 2002, no pet.) ("The transactional approach requires courts, in order to determine res judicata, to examine the factual basis . . . presented in the cases.").  Accordingly, the Defendant's contention that "the test for res judicata is not whether the claims require proof of the same facts" (Def. Sum. Judg. Br. at 9) is simply not accurate.

Importantly, even where a subsequent proceeding shares several facts with a previous proceeding, "[r]es judicata will not apply where different facts or events exist that lead to a second lawsuit." *Stephens v. Dallas Area Rapid Transit*, 50 S.W.3d 621, 630 (Tex. App. – Dallas 2001, pet. denied); *see also Franklin v. Rainey*, 556 S.W.2d 583, 585 (Tex. Civ. App. – Dallas 1977, no writ) (finding res judicata did not bar subsequent claim involving the same piece of land and similar subject matter where intervening facts altered the rights of the plaintiff).  This is because, as explained above, outside of any common facts, a court must evaluate those facts that comprise the "factual basis" or "gist" of each of the individual proceedings—in other words, those facts that are necessary to the adjudication of the proceeding.  *See, e.g.*, *Rhoades v. Penfold*, 694 F.2d 1043, 1047-48 (5th Cir. 1983) (noting, in a § 1983 case arising out of Texas, that "the application of res judicata has been limited to issues of fact or law necessary to the decision in the prior judgment").  This notion is most apparent where a subsequent claim—like Mr. Skinner's—does not seek to litigate the merits of the "substantive issues underlying the state court judgment," but where the subsequent claim "maintains that the proceeding itself deprived [the plaintiff] of due process." *Id.* at 1048 (affirming holding that res judicata did not bar second

cause of action where plaintiff sought to litigate alleged due process violations arising from the first cause of action).

Here, while the Article 64 proceedings and Mr. Skinner's current § 1983 actions may be said to relate generally to access to DNA evidence, it is evident that the separate proceedings have distinct factual bases, and that Mr. Skinner's current claims clearly do not *require* proof of the same facts as the Article 64 proceedings. During the Article 64 proceedings, Mr. Skinner was required to prove facts that would meet the requirements of Article 64.03(a)(2)(A)—that exculpatory DNA test results would have led to an acquittal on the charges. *See* Tex. Code Crim. Proc. Ann. art. 64.03(a)(2) (Vernon Supp. 2010) (requiring that "the convicted person establish[] by a preponderance of the evidence that (A) the person would not have been convicted if exculpatory results had been obtained through DNA testing"). By contrast, in the instant case, Mr. Skinner will be required to prove facts that demonstrate that the Article 64 proceedings violated his due process rights. Indeed, in adjudicating Mr. Skinner's federal claims, this Court need not—nor should it—make any actual findings about Mr. Skinner's guilt or innocence or the exculpatory nature of the DNA evidence sought. While such determinations were within the scope of the Article 64 proceedings and necessary to the adjudication of the previous litigation, they have no role in the instant action.[10]   In this way, the "gist of the complaint" filed by Mr. Skinner in this Court is wholly distinct from the "gist" of the petitions filed during the Article 64 proceedings. Because the claims in the Article 64 motions and Mr. Skinner's § 1983 claims share neither the same factual basis nor the same "gist," the claims do

---

[10] Of course, Mr. Skinner strongly maintains that there is ample evidence that creates doubt about his guilt. *See* Section III, *infra*; however, Mr. Skinner's § 1983 action is not the forum in which such a determination will ultimately be made.

not arise from the same subject matter and his federal claims are, therefore, not precluded by res judicata.

Despite a requirement to do so, nowhere in her brief does the Defendant attempt to demonstrate *why* this current proceeding, in her estimation, arises out of the same subject matter as the Article 64 proceedings. *See GE Capital Corp. v. Hunt Cnty. Appraisal Dist.*, No. 05-97-02192-CV, 2000 WL 348562, at *4 (Tex. App. – Dallas Apr. 5, 2000, no pet.) (not designated for publication) ("A defendant seeking to establish his entitlement to summary judgement [sic] on the affirmative defense of *res judicata* bears the burden of presenting 'sufficient evidence to establish that it should apply, including the judgment and pleadings from the prior suit.'") (citation omitted).  Outside of unsupported assertions that they indeed do arise from the same subject matter, the Defendant attempts no meaningful comparison of the actual factual bases of the proceedings.  Accordingly, the Defendant has failed to meet her burden and her res judicata defense cannot stand.

> 2. The Defendant Likewise Has Failed Conclusively to Establish that Mr. Skinner's § 1983 Claims Could Have Been Adjudicated During the Article 64 Proceedings.

Even if this Court were to find that Mr. Skinner's § 1983 claims arise from the same subject matter as those litigated during the Article 64 proceedings in state court, the doctrine of res judicata still would  not bar Mr. Skinner's federal constitutional claims in this proceeding. The Defendant must conclusively prove that Mr. Skinner could have litigated his current claims during the previous Article 64 proceedings.  Because Mr. Skinner's § 1983 claims had not yet matured at the initiation of the state court proceedings, and Mr. Skinner likely could not have presented his constitutional claims for adjudication, the Defendant cannot meet this burden.

"*Res judicata* will not bar a plaintiff's recovery in a subsequent lawsuit absent a showing that the same claims were mature at the time of the prior judgment." *Collins v. Guinn*, 102 S.W.3d 825, 832 (Tex. App. – Texarkana 2003, pet. denied). A claim is mature when it has accrued. *Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 207 (Tex. 1999); *Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship*, 323 S.W.3d 203, 216-17 (Tex. App. – El Paso 2010). "Thus, a judgment does not bar a subsequent action arising from the same set circumstances [sic] if the subsequent claim accrued *after* the original judgment." *Hernandez*, 56 S.W.3d at 116 (emphasis added); *see also Texas Employers' Ins. Ass'n v. Tobias*, 669 S.W.2d 742, 744 (Tex. App. – San Antonio 1983, writ ref'd n.r.e.); *see also Loyd v. ECO Res., Inc.*, 956 S.W.2d 110, 126 (Tex. App. – Houston [14th Dist.] 1997, no pet.), *abrogated on another issue by Tooke v. City of Mexia*, 197 S.W.3d 325 (Tex. 2006)). Indeed, the Fifth Circuit has consistently held that a claim must exist *at the time* the first suit is filed, in order for res judicata to preclude its litigation in a subsequent action. *See, e.g.*, *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 572 (5th Cir. 2005); *accord Hernandez*, 56 S.W.3d at 116. Accordingly, a current claim is not barred by res judicata unless the defendant establishes that it was mature at the time that a previous claim arising out of the same transaction was filed. *See, e.g.*, *Musgrave*, 67 S.W.3d at 522 (finding no res judicata bar where "movants did not provide summary judgment proof that [plaintiff's] claims . . . were mature during" the prior litigation, because "res judicata does not apply to claims that are not mature at the time of the prior proceeding"). This is particularly true where the claims that comprise the subsequent cause of action resulted from the court's judgment in the initial proceeding. *See, e.g.*, *Texas Employers' Ins.*, 669 S.W.2d at 744 (finding that res judicata did not bar subsequent claim where basis for the claim did not accrue until the judicial mandate of the court presiding over the initial proceeding). Moreover, a defendant who attempts

17

to establish that a later claim was, in fact, mature at the time of the first proceeding must do so with specificity. *See Musgrave*, 67 S.W.3d at 522 (requiring specific evidence of maturity and noting that "vague statements in the movants' pleadings pertinent to maturity" did not establish a claim's maturity because "pleadings are not summary judgment proof.")

It is clear that the violations currently complained of by Mr. Skinner did not come into being until after the CCA's judgment on Mr. Skinner's motion for rehearing during the first proceeding and after the CCA's judgment affirming the district court's denial of Mr. Skinner's second motion for DNA testing. Hence, the respective constitutional violations did not accrue until *after* the CCA's judgments, and the late materialization and unexpected nature of the infirmities left Mr. Skinner with little meaningful opportunity to litigate his federal claims. *See* Section I.B, *supra*.

Moreover, it is arguable that Mr. Skinner's claims were jurisdictionally barred from adjudication during the Article 64 proceedings. While it appears that the CCA has never directly spoken to this issue, decisions of Texas's intermediate appellate courts suggest that certain types of constitutional challenges may not be adjudicated within an Article 64 proceeding. For example, those claims amounting to a request for habeas relief cannot be raised on an appeal arising from an Article 64 proceeding. *See, e.g.*, *Chavez v. State*, 132 S.W.3d 509, 510 (Tex. App. –Houston [1st Dist.] 2004, no pet.) (finding no jurisdiction to review prisoner's due process claim during appeal of unsuccessful Article 64 motion, because such a claim "amounts to a request for habeas relief"). In determining whether a due process claim amounted to a "request for habeas relief," Texas courts have at times relied on the Fifth Circuit's articulation of the scope of habeas corpus, *see, e.g.*, *Evans v. Eldridge*, No. 13-08-00634-CV, 2009 WL 2462893, at *2-3 (Tex. App. – Corpus Christi Aug. 13, 2009, pet. denied) (relying on Fifth Circuit's analysis to

determine that due process challenge to proceedings was exclusively cognizable in a habeas

corpus proceeding), cert. denied, 131 S. Ct. 107 (2010), which  previously included within that

scope challenges to the adequacy of state procedures providing access to DNA evidence.

Consequently, under Texas law, certain constitutional challenges to Article 64's procedures—

such as Mr. Skinner's—would have amounted to a request for habeas relief under the then-

relevant authority and, therefore, would likely have been considered outside of the scope of an

Article 64 proceeding.  *Cf. Watson v. State*, 96 S.W.3d 497, 500 (Tex. App. – Amarillo 2002,

pet. ref'd) (refusing to review due process challenge for lack of jurisdiction where such challenge

fell outside of the scope of Article 64); *Cormier v. State*, No. 10-04-00236-CR, 2006 WL

408411, at *1 & n.2 (Tex. App. – Waco 2006, no pet.) (same).

     Moreover, the cases Defendant cites to support her contention that Mr. Skinner could

have brought his due process claims in state court shed little light on the issue before this Court,

and actually bolster Mr. Skinner's argument.  In *Curry v. State*, 186 S.W.3d 39 (Tex. App. –

Houston [1st Dist.] 2005, no pet.), the court simply explained that, where a constitutional

challenge to a statute was not raised at the time of trial, such challenge is not waived under two

circumstances: (1) "courts will address questions involving the constitutionality *of the statute*

*upon which a defendant's conviction is based*, even when such issues are raised for the first time

on appeal," *id.* at 42 (emphasis added), and (2) "an appellant does not waive error if he fails to

raise a *facial* constitutional challenge to a statute at trial."  *Id.* (emphasis added).  Such is hardly

indication of an Article 64 court's mandate to limit its review to certain issues.  Similarly, the

Defendant's reliance on *Briggs v. State*, 789 S.W.2d 918 (Tex. Crim. App. 1990) (en banc)

*overruled by Karenev v. State*, 281 S.W.3d 428 (Tex. Crim. App. 2009) , which does not even

speak to Article 64, is misplaced.  It, like *Curry*, simply restates the unremarkable (and now

overruled) notion that a facial challenge to a statute is not waived even where such challenge was not made at trial. *See id.* at 924. Finally, in *Reger v. State*, 222 S.W.3d 510 (Tex. App. – Fort Worth 2007, pet. ref'd), the appellant asserted facial and as-applied challenges that could have been brought at the trial level but were not. That scenario—and those raised in *Curry* and *Briggs*—are wholly distinguishable from the circumstances surrounding Mr. Skinner's case. Mr. Skinner's claims do not involve a challenge to the statute upon which his conviction is based, nor does he make a facial (or even as-applied) challenge that was available at the time Article 64 proceedings were first brought before the trial court. The basis for Mr. Skinner's current claims did not arise until the CCA entered its decisions, at which time it is unclear whether Mr. Skinner would have had the opportunity to litigate his constitutional issues.[11] In any event, any uncertainty about whether the Texas courts could have entertained Mr. Skinner's claims is fatal to the Defendant's argument, as she bears the burden of proving the elements of res judicata "conclusively." Given the authority suggesting that the CCA may not have been able to review Mr. Skinner's claims, it is far from "conclusively" clear that the Texas courts would have heard and decided Mr. Skinner's Eighth and Fourteenth Amendment claims had he been able to raise them in the Article 64 proceedings.

Finally, the Defendant's invocation of the Texas Constitution on this point does little to advance her cause. Mr. Skinner does not assert that Texas state courts generally lack the power

---

[11] The Defendant mischaracterizes Mr. Skinner's previous assertion that he could not have anticipated the constitutional violations that occurred during his Article 64 proceedings. Simplifying his assertion to a fault, the Defendant argues that Mr. Skinner should have anticipated that the Texas courts could apply Article 64 "in a manner that denied him DNA testing." (*See* Def. Sum. Judg. Br. at 6 (improperly summarizing Plaintiff's Response to Defendant's Motion to Dismiss).) Mr. Skinner could not have foreseen that the CCA would act in such an arbitrary and capricious manner (evident in the very nature of the term "arbitrary and capricious"). Nor could he have expected that the CCA would construe Article 64 in an unconstitutional manner. *Cf. Bigby v. Dretke*, 402 F.3d 551, 558 (5th Cir. 2005) (discussing the presumption of fairness in judge's adjudication of claims and stating that "'[o]rdinarily we presume that public officials have properly discharged their official duties.'" (alteration in original) (quoting *Bracy v. Gramley*, 520 U.S. 899, 909 (1997))).

to hear constitutional challenges; rather, Mr. Skinner asserts simply that state court decisions strongly suggest that, at least at the time he was litigating his Article 64 motions, they would not have been heard in such proceedings—a choice-of-forum restriction that in no way conflicted with the Texas Constitution.

> **E.** **The Defendant's Policy and Deterrence Arguments Are Both Baseless and Irrelevant to the Res Judicata Analysis.**

The Defendant gamely attempts to resurrect the now twice-rejected assertion that precluding Mr. Skinner's federal claims is necessary to deter condemned prisoners from "engag[ing] in piecemeal litigation," (Def. Sum. Judg. Br. at 10). That position is no more persuasive now than it was when the Defendant unsuccessfully urged it as a basis for the Supreme Court to deny review, or when she unsuccessfully advanced it again in her brief on the merits. *See Skinner v. Switzer*, 130 S. Ct. 3323, 3323 (2010) (granting certiorari despite Defendant's claim, in opposing review, that recognizing access-to-DNA claims under § 1983 would result in a flood of burdensome litigation); *Skinner v. Switzer*, 131 S. Ct. 1289, 1299-1300 (2011) (rejecting as implausible the Defendant's protestations that such claims would swamp the federal courts). Defendant has failed to prove that any such "parade of horribles" is imminent. *See id.* at 1299 (observing that "no evidence tendered by Switzer shows any litigation flood or even rainfall" as a result of allowing prisoners to bring claims for post-conviction DNA testing via § 1983). Indeed, the Supreme Court specifically noted that the provisions of the Prison Litigation Reform Act of 1995 are adequate to "prevent sportive filings in federal court," including those that are "malicious," "frivolous," or "unlikely to succeed." *Id.* at 1299-1300 (citations omitted).

More important, whatever the risk that a ruling in Mr. Skinner's favor might bring more litigation over DNA testing, the Defendant's deterrence arguments, and her vilification of Mr.

21

Skinner for attempting to vindicate his state-created and constitutionally guaranteed rights (*see* Def. Sum. Judg. Br. at 10-11), do nothing to establish her claimed res judicata defense.  The res judicata analysis gives no weight to a defendant's speculation about the deterrent effect of precluding a particular claim, or a defendant's personal opinion about whether the plaintiff's cause of action is "reasonable."  Accordingly, the Court may not accede to Defendant's demand that it dismiss Mr. Skinner's claim on res judicata grounds "to counter the powerful incentive of death row inmates to engage in piecemeal litigation" (*id.* at 10) and because he "w[o]n a stay of execution from the Supreme Court of the United States" (*id.* at 11).  The Supreme Court has cautioned against taking actions that may appear to penalize prisoners for exercising their right to seek legal redress.  *See United States v. Goodwin,* 457 U.S. 368, 373-74 (1982) ("[S]ince the fear of . . . vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process . . . requires that a defendant be freed of apprehension of such a retaliatory motivation . . . ."); *see also United States v. Henry*, 709 F.2d 298, 315-16 (5th Cir. 1983) ("'Actual retaliatory motivation" need not exist so long as the situation produces a reasonable 'fear of such vindictiveness' that would deter defendants from pursuing postconviction remedies." (quoting *Blackledge v. Perry*, 417 U.S. 21, 28 (1974))). Despite the Defendant's suggestion to the contrary, Mr. Skinner cannot be faulted for vigorously pursuing this lawsuit the Supreme Court has determined he was entitled to bring.  *Cf. United States v. Kresdorn*, 693 F.2d 1221, 1231 (5th Cir. 1982) (disapproving of prosecutor's "vindictiveness" after prisoner's successful appeal and noting the chilling effect that such "vindictiveness" has on a prisoner's right to appeal).  Nor should his counsel be criticized for vigorously advocating for their client.  *See Anders v. State of California*, 386 U.S. 738, 744

(1967) (recognizing that the role of the advocate "requires that he support his client's appeal to the best of his ability").

Finally, though irrelevant to the res judicata analysis, the Defendant's baseless attack on Mr. Skinner's cause of action as "unreasonable and vexatious" deserves brief comment.[12]  As articulated by the Supreme Court in *Dist. Att'y's Office v. Osborne*, 129 S. Ct. 2308, 2319 (2009), and cemented by *Skinner*, 131 S. Ct. at 1298, prisoners are entitled to procedural due process when attempting to avail themselves of state mechanisms offering access to DNA evidence, and any alleged due process violations may be asserted in federal court via § 1983.  The Defendant ignores both *Osborne* and *Skinner*, casting its revisionist history as "strong public policy" arguments.  "Public policy," whether strong or weak, nowhere enters into whether a plaintiff's claims meet the elements of res judicata.  The Defendant is simply seizing the opportunity to air once again her dissatisfaction with the legal regime *Osborne* and *Skinner* have left in place. Taken to its natural conclusion, the Defendant's position allows for no scenario in which a court could ever reach the merits of a prisoner's § 1983 claim, let alone find that he has prevailed, because the claim would always necessarily be precluded by res judicata.  That cannot be so. The Supreme Court has expressly sanctioned § 1983 as a vehicle for vindicating violations of procedural due process rights related to access for DNA evidence, *Skinner*, 131 S. Ct. at 1298; *see also Craine v. Alexander*, 756 F.2d 1070, 1075 (5th Cir. 1985) (noting that § 1983 is a remedy specifically provided for the vindication of rights).  The implication that no set of

---

[12] In addition, the Defendant's weak contention that the present § 1983 lawsuit is a "multiplication of Skinner's post-conviction proceedings" is a doomed attempt to relitigate the issue squarely decided against the Defendant by the Supreme Court.  If the claims before this Court could fairly be described as inextricable from the constitutional challenges litigated in Mr. Skinner's habeas corpus proceedings, *Heck v. Humphrey*, 512 U.S. 477 (1994), would have precluded bringing them via § 1983.  It is precisely because these claims are different in kind from those brought in Mr. Skinner's habeas petition that the Supreme Court authorized him to litigate them here.

circumstances exist where a prisoner could actually receive relief under § 1983 would, in essence, undo the High Court's recent declaration.

## II.   THE CCA'S APPLICATION OF THE "NO-FAULT" PROVISION TO MR. SKINNER'S CASE WAS UNCONSTITUTIONAL, AND THEREFORE MR. SKINNER, NOT THE DEFENDANT, IS ENTITLED TO PARTIAL SUMMARY JUDGMENT.

The Defendant further errs in asserting that summary judgment is warranted because Mr. Skinner, having failed to pursue DNA testing at trial, cannot establish that his constitutional rights were violated when he was denied post-conviction DNA testing on that basis.[13]  First, under the circumstances of this case, trial counsel's decision to forego DNA testing cannot be imputed to Mr. Skinner.  More important, Article 64's no-fault provision, as construed by the CCA and applied to Mr. Skinner's case, imposed a condition that cannot withstand constitutional scrutiny.

The Defendant correctly articulates the general rule that a lawyer's actions ordinarily will be imputed to his client without his express consent.  (*See* Def. Sum. Judg. Br. at 16-17 (citing *Coleman v. Thompson*, 501 U.S. 722 (1991) and *Wainwright v. Sykes*, 433 U.S. 72 (1977)).) What the Defendant ignores, however, is that federal courts at every level, both before and after *Wainwright* and *Coleman,* have consistently excepted from this general rule those "exceptional circumstances" where holding a party to be bound by his counsel's actions would work a great injustice on the party's constitutional rights—even where trial counsel's actions were not so deficient as to constitute ineffective assistance of counsel.  *See, e.g., Sawyer v. Smith*, 497 U.S.

---

[13] The Defendant argues that she is entitled to summary judgment because Mr. Skinner "[c]annot [e]stablish that Switzer [v]iolated [h]is [c]onstitutional [r]ights [w]hen [h]e [h]ad [t]he [o]pportunity to [c]onduct DNA [t]esting [d]uring [h]is [t]rial." (Def. Sum. Judg. Br. at 11.) Mr. Skinner respectfully reminds the Court that he has sued the Defendant in her capacity as the custodian of the requested items, and therefore, need not prove that the Defendant herself has violated his constitutional rights.  Mr. Skinner instead asserts that it was the CCA's unconstitutional construction of Article 64's no-fault provision, and its application to his case, that violated his constitutional rights.

227, 256 (1990) (noting the longstanding exception that, in the presence of "exceptional circumstances," a defendant may not be bound by the tactical decisions of his competent counsel (citing *Reed v. Ross*, 468 U.S. 1 (1984))); *McCallon v. Thomas*, No. Civ. A. No. 02-573, 2003 WL 228991, at *2 (E.D. La. Jan. 30, 2003) (recognizing that court could find that party was not bound by actions of counsel if party demonstrated that there existed "exceptional circumstances" or that so binding him would be "manifestly unjust").  Accordingly, the Defendant's complaint that the Court cannot rule in Mr. Skinner's favor without returning to a regime under which a defendant could forfeit a federal right only by affirmatively participating in the decision not to assert it (*see* Def. Sum. Judg. Br. at 17) is substantially exaggerated.   Mr. Skinner merely requests that this Court, following well-established precedent, find that exceptional circumstances exist in this case, warranting an exception to the general rule imputing counsel's actions to his client.

The wisdom of the longstanding exception to the general rule is particularly evident in circumstances where counsel's waiver involved certain fundamental rights, because "certain decisions regarding the exercise or waiver of basic trial rights are of such a moment that they cannot be made for the defendant by a surrogate." *Florida v. Nixon*, 543 U.S. 175, 187 (2004) (quoting *Jones v. Barnes*, 463 U.S. 745, 751 (1983)); *see also Wainwright v. Sykes*, 433 U.S. 72, 93 & n. 1 (1977) (Burger, C. J., concurring) (noting that a defendant must have the "ultimate responsibility" over the waiver of certain trial rights including "whether to plead guilty, waive a jury, testify in one's own behalf"; concerning those decisions, counsel "must both consult with the defendant and obtain consent to the recommended course of action"); *Brady v. United States*, 397 U.S. 742, 748 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and

likely consequences.").  Accordingly, while the general rule remains that decisions of counsel will be imputed to a criminal defendant, in certain exceptional circumstances and with regard to particular types of rights, decisions of counsel cannot bind a defendant unless made with his express, knowing and intelligent consent.

Such exceptional circumstances exist here.  This case brings into focus the interplay between, on the one hand, the fundamental constitutional right every criminal defendant enjoys of a presumption of innocence and, on the other hand, the unique and powerful role DNA testing has come to have in the criminal justice system.  A bedrock principle of our constitutional system of justice is that the State, not the defendant, bears the burden of proof at trial.  *See Sandstrom v. Montana,* 442 U.S. 510, 520-21 (1979); *In re Winship,* 397 U.S. 358, 364 (1970). Equally fundamental are the principles that a criminal defendant cannot be forced to incriminate himself and has no obligation to testify or otherwise present evidence of his innocence at trial. *See Nixon*, 543 U.S. at 187.

These concepts predate the formation of our Republic and have remained steadfast as criminal investigative tools have evolved.  And they must remain vibrant even in the face of the most significant advancement of all in forensic science—DNA testing.  The leap forward in criminal justice wrought by DNA science has been widely noted.  *See, e.g.*, *Osborne*, 129 S. Ct. at 2316 ("Modern DNA testing can provide powerful new evidence unlike anything known before.").  While DNA testing may not resolve every case, it "has an unparalleled ability both to exonerate the wrongly convicted and to identify the guilty.  It has the potential to significantly improve both the criminal justice system and police investigative practices."  *Id*. at 2312.

Thus, this case involves the "exceptional circumstance" where the defendant exercised his constitutional right to put the state to its burden at trial, failed in that effort, but nevertheless

26

could actually be proved innocent, and thus spared of his execution, by DNA testing. These facts alone would warrant an exception to the general rule, but in this case there is even more. Here, not only is there no evidence of an informed and knowing waiver of the opportunity for post-conviction testing, but in fact neither counsel nor defendant could have known that post-conviction DNA testing would even be an option. At the time, DNA testing as a forensic science was in its infancy, and it would be seven more years before the Texas Legislature would acknowledge, through the enactment of Article 64, the unique ability of that science to exonerate the innocent. Thus, at the time of his trial, Mr. Skinner could not knowingly have waived his right to post-conviction testing because no such right then existed. These facts establish the type of exceptional circumstances that justify not holding Mr. Skinner forever bound by his trial counsel's decision not to conduct DNA testing.

It is for this very reason that the application of the CCA's construction of Article 64 to this case imposes an unconstitutional condition. As discussed above, *see* Section I.C, *supra*, the CCA's construction of the no-fault provision in essence forces a criminal defendant to waive his federally protected right to put the prosecution to its burden at trial, on pain of forfeiting forever his state-created right to invoke Article 64 after conviction.[14] The presumption of innocence and the prosecution's corresponding burden of proof are the cornerstones of our criminal justice system. *See In re Winship,* 397 U.S. at 362 ("'This notion [of the government's burden of proof]—basic in our law and rightly one of the boasts of a free society—is a requirement and a safeguard of due process of law in the historic, procedural content of "due process."'") (citation

---

[14] The Defendant quibbles that a "Hobson's choice" arises only "when one is given the option of taking the one thing offered or nothing at all." (Def. Sum. Judg. Br. at 15 n.3.) Article 64, as construed by the CCA and applied in this case, does precisely that—because it requires, without exception, that a criminal defendant test DNA evidence at trial or forfeit forever any chance to do so. Whether one describes the resulting situation as a "Hobson's choice," a 'Catch-22," or "being between a rock and a hard place," the result is the same—the construction creates an unconstitutional condition that is fundamentally unfair, in violation of due process.

omitted).   Conditioning a prisoner's ability to seek access to DNA evidence under Article 64—a

state-created interest—on his waiver of these constitutional protections offends the longstanding

principle that the government may not require a claimant to surrender a constitutional right in

order to obtain a benefit from the government, even if the government need not have provided

the benefit in the first place.   *See, e.g.*, *Blackburn,* 42 F.3d at 931 (the government "'may not

deny a benefit to a person on a basis that infringes his constitutionally protected interests'")

(citation omitted); *United States v. Scott*, 450 F.3d 863, 866 (9th Cir. 2006) ("The

'unconstitutional conditions' doctrine limits the government's ability to exact waivers of rights as

a condition of benefits, even if those benefits are fully discretionary.") (citing *Dolan v. City of

Tigard*, 512 U.S. 374 (1994)); *see also Osborne*, 129 S. Ct at 2336 n.8 (Stevens, J. dissenting)

(noting that denying access to DNA evidence based on the pretrial tactical decision of counsel

infringes upon a defendant's presumption of innocence and the prosecution's burden of proof).

The doctrine of unconstitutional conditions seeks to protect individuals from actions by the

government that would effectively chip away at an individual's constitutional rights:

> Government is a monopoly provider of countless services, notably law
> enforcement, and we live in an age when government influence and control are
> pervasive in many aspects of our daily lives.  Giving the government free rein to
> grant conditional benefits creates the risk that the government will abuse its power
> by attaching strings strategically, striking lopsided deals and gradually eroding
> constitutional protections.  Where a constitutional right "functions to preserve
> spheres of autonomy . . . [u]nconstitutional conditions doctrine protects that
> [sphere] by preventing governmental end-runs around the barriers to direct
> commands."

*Scott*, 450 F.3d at 866  (citations omitted) (alterations in original) (finding that a warrantless

search as a precondition for pretrial release subjected the defendant to an unconstitutional

condition).

In light of these bedrock principles, the CCA's construction of the no-fault provision clearly places Mr. Skinner's fundamental trial rights, secured by the federal constitution, in opposition to his state-created right to seek DNA testing, provided by Article 64. This forced choice violates due process and cannot withstand judicial scrutiny.[15]

The assertion that imposing such a condition is necessary to prevent prisoners from "l[ying] behind the log," *Skinner v. State,* 293 S.W.3d 196, 202 (Tex. Crim. App. 2009), and engaging in "gamesmanship" (Def. Sum. Judg. Br. at 14) fails to recognize the constitutional dimensions of the problem. *See, e.g., Osborne,* 129 S. Ct. at 2336 n.8 (Stevens, J. dissenting) (describing the "speculative" notion that "defendants will 'play games with the criminal justice system' with regard to the timing of their requests for DNA evidence" as "gravely concerning," specifically because the argument ignores the fact that the prosecution bears the burden of proof at trial). The speculative "threat" that some convicted defendant might strategically delay seeking DNA testing until the eleventh hour does not justify denying another prisoner access to DNA evidence that could prove his innocence.[16] As a preliminary matter, Article 64 forbids

---

[15] The Defendant's assertion that "Skinner cannot be serious" in invoking the doctrine of unconstitutional conditions (*see* Def. Sum. Judg. Br. at 15) cannot itself be serious. Certainly, the Defendant's apparent denial that the doctrine even exists is untenable. The Defendant's error may arise from her having misconstrued the term "benefit" in this context, mistakenly equating it to an item of value as opposed to a state-created entitlement that, once provided, cannot be taken away without due process. *See, e.g., Osborne,* 129 S. Ct. at 2319. For this reason, the Defendant's attempt to invoke plea bargaining as a counter-example (arguing that a defendant may be required to surrender his constitutional rights as a condition of the prosecution's entering the agreement) cannot bear the weight Defendant would place on it. Similarly, the Defendant's comparison of Mr. Skinner's situation to one involving a procedural default is wholly inapposite. The scope of review in state and federal habeas proceedings is statutorily defined, and nothing precludes Congress or a state legislature from conditioning a defendant's right to post-conviction review on his *prior* compliance with clearly announced, regularly applied procedural requirements for preserving error. That regime in no way equates to forcing a defendant to waive constitutionally protected rights at trial in order for him to receive a state-created entitlement after conviction, as is the case here, especially when that right is so fundamental to a fair trial and when the entitlement has the potential to prevent the execution of the innocent.

[16] As noted above, Mr. Skinner was tried years before Article 64 was enacted. At that time, no "threat" could have existed that Mr. Skinner, through his counsel, would forego DNA testing at trial in the hopes of obtaining it later if he were convicted. In the circumstances of this case, therefore, it is preposterous for the Defendant to accuse Mr. Skinner of "sandbagging" (*see* Def. Sum. Judg. Br. at 15).

requesting DNA testing for purposes of delay; this provision provides ample insurance against any such risk. *See* Tex. Code Crim. Proc. Ann. art. 64.03(a)(2)(B).[17]  Moreover, forcing a defendant to conduct DNA testing prior to trial or not at all would do nothing to conserve state resources.  To the contrary, it would substantially increase the burden on State resources, as the cost of pretrial DNA testing requested by most defendants would fall on the taxpayers.  Certainly, neither the CCA nor the Defendant has identified any state interest that is compelling enough to trump the importance of post-conviction access to potentially exculpatory DNA.  That the no-fault provision serves no compelling state interest is abundantly evident from the fact that, as noted above in the Introduction, the Texas Legislature has just stripped it from Article 64 altogether. *See* 82d Leg., 2011 R.S., ch. 14, § 5 2011 Tex. Sess. Law Serv. Ch. 278 (H.B. 1573). Accordingly, Texas has joined the federal government[18] and the overwhelming majority of states in not conditioning a defendant's access to post-conviction DNA testing on his having waived fundamental rights at trial.

---

[17] In neither of Mr. Skinner's Article 64 proceedings was he found to have filed his motion for purposes of delay. *See Skinner*, 122 S.W.3d at 811 (reversing, as an abuse of discretion, the district court's finding to the contrary); *Skinner*, 293 S.W.3d at 200 (finding that Mr. Skinner's second motion likewise was not made for purposes of delay).

[18] The Defendant asserts that Mr. Skinner would not qualify for DNA testing under the standards of the federal Innocence Protection Act "because he has not submitted any sworn statement asserting his actual innocence" (Def. Sum. Judg. Br. at 18-19) and that his counsel have not obtained and filed such an affidavit because "they know their client is guilty" (Def. Sum. Judg. Br. at 19).  We in fact have grave doubts about Mr. Skinner's guilt, for the reasons stated in Section III *infra*, and we cannot leave unanswered Defendant's heedless implication that we have somehow skirted legal lines and the standards of professional responsibility by zealously representing a client found guilty by a jury.  The fact that a jury convicted Mr. Skinner does not foreclose the possibility that he is innocent.  Indeed, every exoneree, by definition, once stood duly convicted.  Mr. Skinner has consistently maintained his innocence to both the Court and his counsel (both at trial and since trial), and we as counsel have neither reason nor justification to presume otherwise.  We will simply note three additional points.  First, as the Defendant has conceded (*see* Def. Sum. Judg. Br. at 19), Article 64 imposes no requirement that a movant aver his actual innocence; second, Mr. Skinner's actual innocence is not an issue to be adjudicated by this Court, *see* Section III, *infra*, so there was no evident need to file such an affidavit; and, third, to eliminate further quibbling on this point, we are submitting with this brief a declaration from Mr. Skinner proclaiming his innocence.  *See* Appendix to Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion for Partial Summary Judgment ("Appendix") at 15.

The Defendant's claim that Mr. Skinner's challenge to the CCA's construction of Article 64's no-fault provision amounts to punishing a "good deed" (Def. Sum. Judg. Br. at 15) is also meritless.   First, Article 64 (and all of the entitlements therein) is not simply a "good deed"; it takes a jaded eye indeed to so characterize a procedure designed to prevent the incarceration, and even execution, of persons actually innocent of the crimes for which they have been convicted. In any event, Article 64 extends to all potential beneficiaries a liberty and life interest that, like any state-created entitlement, must be administered in a way that comports with due process. *See, e.g.*, *Osborne*, 129 S. Ct. at 2319 (explaining that the Fourteenth Amendment's Due Process Clause "imposes procedural limitations on a State's power to take away protected entitlements"). Second, the Defendant's colorful  mischaracterization of Mr. Skinner's position as "argu[ing] that the Constitution *forbids* States to establish procedures for post-conviction DNA testing *unless* they also permit criminal defendants to sandbag at their trials" (Def. Sum. Judg. Br. at 15) requires little response, as of course Mr. Skinner asserts nothing of the sort.  He simply maintains that the State cannot unconstitutionally limit his ability to obtain a state-created entitlement based on the speculation that some other defendants might delay testing for strategic reasons. This is particularly so in this case, where Mr. Skinner could not have been engaging in gamesmanship during trial because no avenue then existed for seeking post-conviction DNA testing, and where he vigorously pursued Article 64 relief almost from the day that statute became law.

Thus, this case does not involve many of the concerns expressed by the Defendant.  It does not involve, for example, a convicted person who "lay behind the log," because at the time of Mr. Skinner's trial there was no log to lie behind.  It also does not involve a convicted person who intelligently and knowingly waived his right to post-conviction testing.  This case involves

only a convicted person who exercised his constitutional right to put the State to its burden of proof at trial, without knowing about or intending to waive his subsequently created right to have his innocence established by DNA testing.  The CCA's application of the now-defunct no-fault provision of Article 64 in these circumstances was fundamentally unfair and a denial of Mr. Skinner's constitutional rights.  The Defendant's motion for summary judgment should therefore be denied, and Mr. Skinner's cross-motion for partial summary judgment should be granted.

**III.   THE DEFENDANT'S ASSERTION THAT MR. SKINNER CANNOT ESTABLISH THAT DNA EVIDENCE WILL EXONERATE HIM BOTH IS ERRONEOUS AND DOES NOT PRESENT A BASIS UPON WHICH SUMMARY JUDGMENT MAY BE GRANTED.**

The Defendant asserts, as her third ground for summary judgment, that Mr. Skinner "has failed to show that he might actually be innocent of the crime or that further DNA testing might exonerate him." (Def. Sum. Judg. Br. at 20-21.)  The Defendant is no more entitled to summary judgment on this account than on the other flawed theories in her brief.  In the first place, the Defendant grossly distorts the record in asserting that there is "overwhelming and undisputed evidence" of Mr. Skinner's guilt.  (*Id.* at 21.)  To the contrary, a wealth of evidence raises troubling questions about the real killer's identity, and key pieces of the State's case against Mr. Skinner remain vigorously disputed.  And, in any event, the claims presented to this Court raise issues as to whether Mr. Skinner's civil rights were violated; this is not the forum in which his actual guilt or innocence is to be determined.

The Defendant's "overwhelming evidence of guilt" argument—predictable from a prosecutor trying to preserve a conviction—is reminiscent of her efforts in this case to convince the Supreme Court first that it should deny a stay of execution, and then that it should deny certiorari.  *See, e.g.,* Respondent's Opposition to Application for Stay of Execution at 1-4, *Skinner v. Switzer*, 130 S. Ct. 1948 (2010) (No. 09-9000) (09A743) (describing evidence

32

demonstrating Mr. Skinner's guilt); Respondent's Brief in Opposition to Petition for Writ of Certiorari at 9-10, *Skinner v. Switzer,* 130 S. Ct. 3323 (2010) (No. 09-9000) ("The evidence presented at trial overwhelmingly showed Skinner's guilt; and his conviction and sentence have been upheld every step of the way."); *id.* at 12 ("Additional DNA testing in this case would not affirmatively prove anything.").  On neither occasion did the Defendant's "overwhelming evidence of guilt" contention have its desired effect of convincing the Supreme Court to give short shrift to Mr. Skinner's civil rights claims.  The Supreme Court saw through these efforts to divert attention from what is at stake in this civil rights action, and this Court should do the same.

The truth is that, while the circumstantial evidence presented at trial may have been legally sufficient to support Mr. Skinner's conviction, troubling doubts about his guilt remain unresolved.  Even at trial, the evidence was not as one-sided as the Defendant represents, and since trial more evidence has come to light raising serious questions about whether Mr. Skinner was responsible for the murders—questions that DNA testing could resolve.  For example, the evidence presented at trial showed that the murderer must have possessed considerable strength and dexterity to inflict the injuries suffered by the victims.  *See, e.g.*, Trial. Tr. 28:1186-87; 28:1171-72; 28: 1181-82; 28:1186; 28:1189; 28:1209; 24: 216-17; 28:1211; 28:11 93-95; 24:119; 24:134 (reflecting trial testimony discussing details that reflect the complex nature of the attacks).[19]  But, because Mr. Skinner was completely incapacitated by the extreme quantities of alcohol and codeine that he had consumed just prior to the murders and by a longstanding

---

[19] The trial transcript was part of the record in Mr. Skinner's federal habeas proceeding in this Court, *Skinner v. Dretke,* No. 2:99-CV-0045.  We note that while citation to the record in another case in this manner is not in strict compliance with Local Rule 56.6, regarding the submission of factual material to support a claim that there is a disputed issue of fact, it is consistent with how the Defendant treated such material in her brief (*see, e.g.,* Def. Sum. Judg. Br. at 22), and, in any event, it is Mr. Skinner's position, as noted in the text, that the fact of his guilt or innocence is irrelevant to any issue in this § 1983 action.  In the event the Court determines otherwise, we would of course be happy to gather the materials cited and submit them in a Local Rule 56.6 appendix.

33

physical disability—facts confirmed by both lay witnesses and experts at trial, and significantly

bolstered by evidence developed since then—there remains the question of how he could have

carried out the acts that led to the victims' deaths.  *See, e.g.*, Trial Tr. 26:575-77; 26:605; 26:606-

08; 26:611, 26:611; 26:608; 26:622 (reflecting Howard Mitchell's trial testimony discussing Mr.

Skinner's unconscious state just prior to the murders); *id.* at 29:1356-58; 29: 1369; 30:1464-65;

29:1354, 29:1360-61; 30:1462-63) (reflecting trial testimony by Dr. William Lowry detailing the

basis for his opinion that Mr. Skinner was physically incapable of committing the murders); *id.*

at 29:1317-18; 29:1316; 29:1318-19 (reflecting occupational therapist's trial testimony

discussing the unlikelihood that Mr. Skinner could have caused the injuries to Ms. Busby's throat)

More recently, Dr. Harold Kalant, professor emeritus at the University of Toronto and

one of the world's leading authorities on the effects of alcohol and drugs on human behavior,

reviewed the evidence in Mr. Skinner's case and determined that Dr. Lowry *underestimated* the

amount of alcohol and codeine in Mr. Skinner's system at the time of the murders.  *See* Appendix

to Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment and in Support

of Plaintiff's Cross-Motion for Summary Judgment ("Appendix") at 2-4.  He also debunked the

State's oft-repeated assertion that because Mr. Skinner was a habitual user of alcohol, he, unlike

a moderate drinker, could easily have had sufficient coordination to commit the murders:

> [A] moderate drinker with alcohol and codeine levels in the ranges Mr. Skinner
> appears to have ben in at midnight would almost certainly be comatose, and in
> some cases be near death or even dead, while a heavy drinker would more likely
> be stuporous but possibly rousable at such levels.  Even if the heavy drinker were
> rousable, however, he would not be lucid at such levels, meaning he would not be
> able to assess correctly where he was or have a clear and accurate grasp of reality.
> I would not be surprised if the heavy drinker were able to move about somewhat,
> but *he would be very confused and badly impaired, and would have difficulty
> standing or walking in a coordinated manner.*

Appendix at 4 (emphasis added). These concerns about Mr. Skinner's ability to commit the murders are heightened by Andrea Reed's post-trial recantation of her crucial testimony for the prosecution at trial regarding Mr. Skinner's condition in the hours shortly after the murders occurred. *See, e.g.*, Habeas Evid. Hr'g Tr. at II:148; II:150-51; II:148; II:153-55 (reflecting Andrea Reed's testimony describing Mr. Skinner as being highly incapacitated shortly after the time of the murders). While this Court rejected that recantation on credibility grounds, the fact remains that there is no way to know for certain whether Ms. Reed told the truth at the federal habeas hearing. If she did testify truthfully, her testimony casts an entirely different light on the evidence of Mr. Skinner's ability to commit the crimes. At a minimum, her testimony adds to the lingering doubt about whether Mr. Skinner could have committed the murders.

Similar concerns exist with respect to the jury's apparent rejection of evidence presented at trial pointing to the possibility that Robert Donnell, Twila Busby's uncle, was the real murderer. Even the trial evidence showed that Donnell had the motive, means, and opportunity to commit the murders. *See, e.g.*, Trial Tr. 26:615-18; 26:619; 26:619-20; 29:1277; 29:1281; 26:618, 26:629; 26:629; 29:1289; 26:623. Evidence developed since trial—not the least of which was Debra Ellis' dramatic testimony at the federal habeas hearing, describing how she watched Donnell maniacally scrub out the interior of his vehicle two days after the crime occurred, Habeas Evid. Hr'g. Tr. at I:23-24,—should set off alarm bells that Donnell's possible involvement might have been too readily dismissed by the prosecution, the defense and the jury.

Given the nature of the crimes, the as-yet untested items—which include the rape kit, fingernail clippings, probable murder weapons, and the sweat and blood-covered jacket found at the crime scene, which has been described as similar to, and the same size as, a jacket Donnell was often seen wearing before the crimes, *see id*. at I:30—would undeniably shed new light on

35

who committed them.  If the DNA test results reflected the DNA profile of Donnell, or even of an unidentified male (or female), they, coupled with the other evidence demonstrating that Mr. Skinner was physically incapable of committing the crimes, would certainly prove Mr. Skinner's innocence.  Defendant's assertion that further DNA testing could not help Mr. Skinner establish his actual innocence, therefore, is simply wrong.

Even if true, the Defendant's contention that the evidence of Mr. Skinner's guilt was strong would not distract from the possibility that exculpatory DNA test results could prove his innocence.  Improvements in the precision of DNA testing have demonstrated that DNA test results can overcome even the seemingly most compelling cases of guilt.  *See, e.g.*, *Godschalk v. Montgomery Cnty. Dist. Att'y's Office*, 177 F. Supp. 2d 366, 370 (E.D. Pa. 2001) (granting DNA testing and recognizing that the "well-known powerful exculpatory effect" of DNA testing could raise doubts in the minds of reasonable jurors as to Godschalk's guilt despite strong evidence of guilt and a confession).[20]  *See also Osborne*, 129 S. Ct. at 2337  (Stevens, J., dissenting) ("DNA evidence has led to an extraordinary series of exonerations, not only in cases where the trial evidence was weak, but also in cases where the convicted parties confessed their guilt and where the trial evidence against them appeared overwhelming."); Brandon L. Garrett, *Judging Innocence*, 108 Colum. L. Rev. 55, 109 (2008) (explaining that in 50% of cases in which DNA evidence exonerated a convicted person, reviewing courts had commented on the exoneree's likely guilt and in 10% of the cases had described the evidence supporting the conviction as "overwhelming"); *see also generally* Brief for Current and Former Prosecutors as *Amici Curiae*, *Osborne*, 129 S. Ct. 2308 (No. 08-6) (citing several cases where DNA evidence exonerated

---

[20] Fifteen years after being sentenced, Mr. Godschalk was freed from prison based on exculpatory DNA results. *See* Sara Rimer, *DNA Testing In Rape Cases Frees Prisoner After 15 Years*, N.Y. Times, Feb. 15, 2002, at A12.

prisoners despite the presence of apparently "overwhelming" evidence of guilt); *see also* Brief for Individuals Exonerated by Postconviction DNA Testing as *Amici Curiae* at 1-20, *Osborne*, 129 S. Ct. 2308 (No. 08-6) (same).

The Defendant points to testimony from Mr. Skinner's trial counsel that he had offered to plead guilty to one count of murder in exchange for a life sentence as conclusive evidence that Mr. Skinner must be guilty and therefore that DNA testing cannot prove him innocent.  (*See* Def. Sum. Judg. Br. at 22.)  But surely the Defendant cannot believe that an innocent person could never be induced by circumstances—especially the prospect of a death sentence—to plead guilty.  Certainly the Texas courts are not that naïve.  They have often observed that "there are several reasons a defendant may have for pleading guilty, many of which have nothing to do with the defendant's guilt or innocence."[21]  *Ex parte Tomlinson*, 295 S.W.3d 412, 420 (Tex. App. – Corpus Christi 2009); *cf. Chowdhury v. State*, No. 14-02-00176-CR, 2003 WL 1738414, at *2 (Tex. App. – Houston Apr. 3, 2003) (noting that trial court has the authority to find a defendant innocent even after a guilty plea if there is sufficient evidence to support such a judgment); *see*

---

[21] Offering reasons why an innocent defendant might plead guilty, the CCA has explained that:

> The guilty plea process is not perfect.  But guilty pleas allow the parties to avoid the uncertainties of litigation.  The decision to plead guilty, as we have seen in this case, may be influenced by factors that have nothing to do with the defendant's guilt.  The inability to disprove the State's case, the inability to afford counsel, the inability to afford bail, family obligations, the need to return to work, and other considerations may influence a defendant's choice to plead guilty or go to trial.

*Ex parte Tuley*, 109 S.W.3d 388, 393 (Tex. Crim. App. 2002).  The CCA further explained:

> An innocent person may want to take advantage of a discounted sentence in a plea bargain, rather than gamble on a far greater sentence if a mistaken verdict is returned.  Or a person may not know what he is admitting and accept his attorney's advice that a guilty plea is prudent.  Or a person may be under some pressure to accept responsibility for something he did not do, in order to protect someone else, whom he loves or fears.

*Id.* at 393 n.2.

*also Bordenkircher v. Hayes*, 434 U.S. 357, 368 n.2 (1978) (Blackmun, J., dissenting) (noting that defendants may have reasons other than actual guilt for pleading guilty to charges).

In any event, even if the Defendant were correct that there is no possibility that DNA testing could prove Mr. Skinner innocent, she still would not be entitled to summary judgment. To be sure, this factual question might  bear on an Article 64 proceeding in state court.[22] However, as we pointed out above in rebutting the Defendant's res judicata argument, this Court's function is not to substitute itself for the Texas courts, but rather only to determine whether their interpretation and application of Article 64 to Mr. Skinner's case violated the U.S. Constitution.  Indeed, the Supreme Court *in this very case* has held that Mr. Skinner's ultimate guilt or innocence of the crimes for which he was convicted is not at issue in this § 1983 action. *See Skinner*, 131 S. Ct. at 1298-99 (finding that a ruling in the prisoner's favor in this case has no necessary implication for the validity or integrity of his underlying conviction or sentence). Accordingly, even if the Defendant's assertions regarding Mr. Skinner's guilt or innocence were accepted as undisputed, which they clearly are not, they are not relevant to this case and therefore cannot form the basis for summary judgment.

Finally, even if Mr. Skinner's guilt or innocence *were* a material fact in this case, that factual issue cannot be resolved on a motion for summary judgment.  It is axiomatic that such a motion may not be granted by resolving a disputed factual issue.  *See, e.g.*, *In re Beef Indus. Antitrust Litig.*, 600 F.2d 1148, 1170, 1171 (5th Cir. 1979) (reversing, in part, district court's grant of partial summary judgment because the question on which the district court's decision turned was "a factual one . . . and [was] therefore not determinable on a motion for summary

---

[22] Article 64.03(a)(2) requires a convicted person seeking DNA testing to establish by a preponderance of the evidence, *inter alia,* that he "would not have been convicted if exculpatory results had been obtained through DNA testing." Tex. Code Crim. Proc. Ann. art. 64.03(a)(2)(A) (Vernon Supp. 2010).

judgment").  As discussed above, whether exculpatory DNA results, especially when coupled with the other evidence of Mr. Skinner's innocence, would have produced a different result at trial is very much in dispute.  Mr. Skinner has pointed above to the abundant evidence in this case casting doubt on his guilt.  This is not the proper forum to resolve those issues.  But, even if it were, the Defendant's motion falls far short of demonstrating that there is no genuine issue of material fact.  Therefore, it fails to satisfy the basic requirements for summary judgment.  *See* Fed. R. Civ. P. 56(a) (court may grant summary judgment only if the motion and supporting affidavits and discovery responses show "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law").

## CONCLUSION

For the foregoing reasons, the Court should deny the Defendant's motion for summary judgment in its entirety and instead enter partial judgment in favor of the Plaintiff on his first cause of action.

Respectfully submitted,


ROBERT C. OWEN
Texas Bar No. 15371950
Owen & Rountree, L.L.P.
P.O. Box 40428
Austin, Texas  78704
Phone: (512) 232-9391
Fax: (512) 804-2685
robowenlaw@gmail.com

DOUGLAS G. ROBINSON
1440 New York Avenue, N.W.
Washington, D.C. 20005
Phone: (202) 371-7800
Fax: (202) 661-8235
douglas.robinson@skadden.com

MARIA CRUZ MELENDEZ
Four Times Square
New York, NY 10036-6522
Phone: (212) 735-2435
Fax: (212) 735-2000
maria.cruzmelendez@skadden.com


*Counsel for Plaintiff*


Date:   July 14, 2011

40

**CERTIFICATE OF SERVICE**

On July 14, 2011, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, Amarillo Division, using the electronic case filing system of the Court.  I hereby certify that I have served all counsel of record electronically in accordance with Federal Rule of Civil Procedure 5(b)(2)(E).

_____
Robert C. Owen

786183-New York Server 5A - MSW