IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| HENRY WATKINS SKINNER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:09-CV-281 |
| | § | |
| LYNN SWITZER, | § | |
| District Attorney, | § | |
| 31st Judicial District of Texas, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION TO
STAY AND ABATE 42 U.S.C. § 1983 COMPLAINT**

Before the Court is the 42 U.S.C. § 1983 complaint brought by plaintiff HENRY SKINNER. For the reasons set forth below, it is the recommendation of the undersigned to the District Judge that this case be STAYED AND ABATED.

I.
PROCEDURAL BACKGROUND

In 1995, plaintiff was convicted of murdering his girlfriend and her two sons and was sentenced to be executed for his crimes. He is currently set to be executed by the State of Texas on November 9, 2011. Following his conviction, plaintiff has pursued relief through a variety of court actions, including direct appeal, state and federal habeas corpus proceedings, state motions for DNA evidence, and the instant § 1983 claim. Many of plaintiff's suits, including this one, have sought possession, for DNA testing, of several items of evidence that were recovered from the crime scene and which were not tested at trial.

Of particular importance to this case are Skinner's state motions for DNA evidence. The first motion was denied by the Court of Criminal Appeals (CCA) in December 2003 under the article 64.03 "different outcome" provision of the Texas Code of Criminal Procedure. *Skinner v. State*, 122 S.W.3d 808 (Tex. Crim. App. 2003). At the time Skinner filed his first DNA motion, article 64.03(a)(2)(A) "require[d] the convicted individual to establish by a preponderance of the evidence that a reasonable probability exists that he or she would not have been prosecuted or convicted if exculpatory results had been obtained through DNA testing." *Id.* at 811. The CCA had interpreted such language "to require a reasonable probability that exculpatory DNA tests would prove the petitioner's innocence." *Kutzner v. State*, 75 S.W.3d 427, 439 (Tex. Crim. App. 2002). In applying the standard established in *Kutzner* to Skinner, the CCA concluded Skinner had failed to show any exculpatory DNA test results would prove his innocence and accordingly denied Skinner's motion. *Skinner*, 122 S.W.3d at 813.

While Skinner's first DNA motion was pending, the Texas Legislature amended article 64.03(a)(2)(A) of the Code of Criminal Procedure. Act of April 25, 2003, 78th Legis., R.S., ch. 13, § 3. Skinner did not receive the benefit of the amendment, even though the amendment became effective while Skinner's case was pending before the CCA, because the amendment only applied to motions filed in the state trial court on or after September 1, 2003. *Id.* § 8. Under the amended version, the "reasonable probability" requirement of article 64.03(a)(2)(A) was redacted. *Id.* § 3. In making the amendment, the Texas Legislature clarified the only burden a defendant seeking post-conviction DNA testing should bear was a "preponderance of the evidence" burden and not, in addition, the "reasonable probability" burden. *Smith v. State*, 165 S.W.3d 361, 364-65 (Tex. Crim. App. 2005). The legislature stated in its explanation of why it redacted the "reasonable probability"

requirement that "[d]espite the reasoning in *Kutzner*, the Legislature did not intend for the defendant to have to prove 'actual innocence' . . . in order to meet his burden to have the test done." *Id.* The legislature continued, "[t]he defendant must prove that, had the results of the DNA test been available at trial, there is a fifty-one percent chance that the defendant would not have been convicted." *Id.* Thus, the standard under 64.03 to which Skinner was held in his first motion for DNA testing placed a greater burden on a movant than the standard to which a movant would now be held. *See id.*

Skinner then filed a second motion for post-conviction DNA testing. The CCA denied that motion in 2009. *Skinner v. State*, 293 S.W.3d 196 (Tex. Crim. App. 2009). The state court did not deny the motion as successive nor did it deny the motion based on the same or a similar analysis under article 64.03 as found in its 2003 decision. *See id.* Instead, the CCA denied the motion under article 64.01(b)(1)(B). *Id.* at 2089.

At the time the 2009 opinion was issued, article 64.01(b)(1)(B) mandated a motion for post-conviction DNA testing should be granted only if the evidence "was not previously subjected to DNA testing . . . through no fault of the convicted person." Tex. Code Crim. Proc. Ann. art. 64.01(b)(1)(B), *amended by* Act of May 20, 2011, 82d Legis., R.S., ch. 366, § 1. In Skinner's case, the CCA determined the sought-after evidence was not previously subjected to DNA testing because of the reasoned trial strategy of Skinner's trial attorneys, which the CCA imputed as "fault" by Skinner. *Skinner*, 293 S.W.3d at 209. Thus, the court held Skinner failed to overcome the mandates of article 64.01(b)(1)(B)'s "no fault" provision. *Id.*

In 2011, the Texas Legislature amended article 64.01(b)(1)(B) of the Texas Code of Criminal Procedure and deleted subsection (B) of the article so as to entirely remove the "no fault"

requirement. Tex. Code Crim. Proc. Ann. art. 64.01(b)(1), *as amended by* Act of May 20, 2011, 82d Legis., R.S., ch. 366, § 1. Thus, the no fault requirement the CCA found Skinner failed to meet in 2009 has been completely abrogated.

In early September 2011, plaintiff filed his third motion for DNA testing in state court, seeking to obtain the benefit of additional review under the amended statutes. As of this date, plaintiff's third motion pursuant to article 64 of the Code of Criminal Procedure remains pending in state court.

## II.
## THIS COURT'S JURISDICTION

### *A. Recent State Law Developments*

As of this date, one of the provisions of article 64 of the Texas Code of Criminal Procedure at the core of petitioner's § 1983 claim (the "different outcome" provision) has been significantly amended. The other provision at the heart of petitioner's complaint (the "no fault" provision) no longer exists. Skinner has filed another state motion (his third article 64 motion) seeking the benefit of the new state laws. Considering these developments, the Court must determine whether any live case or controversy exists for the federal court to resolve or whether the issues presented in the § 1983 complaint are moot.

A controversy can become moot "when the issues presented are no longer 'live.'" *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969). Thus, "the enactment of a superseding statute which satisfies all the principles sought in an attack on the prior statute simply moots the case." *Johnson v. State*, 586 F.2d 387, 388 (5th Cir. 1978).

In addition to the constitutional limitation on a federal court's jurisdiction, a federal court should also consider the propriety of prudentially declining to exercise its jurisdiction, even when

jurisdiction is present. The *Pullman* abstention doctrine allows a court to take such action. *See R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed.2d 971 (1941). *Pullman* abstention is warranted "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). A reviewing court should consider two factors in evaluating whether to abstain under *Pullman*: (1) whether there is an unsettled issue of state law and (2) whether resolution in favor of the plaintiff by a state court would obviate the necessity for federal adjudication of the federal constitutional issues. *Ibarra v. Bexar Cnty. Hosp. Dist.*, 624 F.2d 44, 47 (5th Cir. 1980).

It is not clear from the face of his complaint whether plaintiff Skinner challenges the 2003 decision based upon the CCA's interpretation the statute itself or as the CCA determined the facts upon which it based the decision and its application of those facts to Skinner's case. The Court notes plaintiff did not raise an explicit challenge to that part of the statute when he presented this case to the Supreme Court, and review of the Supreme Court opinion in this case indicates the Supreme Court's decision was based upon Skinner's arguments regarding his challenge to the 2009 decision as it construed the statute. *See Skinner v. Switzer,* 131 S.Ct. 1289, 1296 (2011).[1] In any event, to the extent plaintiff does challenge the 2003 CCA decision and to the extent plaintiff's challenge is before the Court and not barred by the *Rooker-Feldman* doctrine or the statute of

---

[1] At the time the complaint was filed, Fifth Circuit law mandated an action by a prisoner for post-conviction DNA testing was not cognizable under 42 U.S.C. § 1983 and must instead be brought as a petition for a writ of habeas corpus. *See Kutzner v. Montgomery County*, 303 F.3d 339 (5th Cir. 2002). Consequently, this Court dismissed the complaint for failing to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The Court's dismissal was affirmed on direct appeal. *Skinner v. Switzer*, 363 Fed. Appx. 302, 2010 WL 338018 (5th Cir. 2010). The Supreme Court granted plaintiff's petition for a writ of certiorari. On review, the Supreme Court held a convicted state prisoner seeking DNA testing of crime-scene evidence was able to properly assert his claim in a 42 U.S.C. § 1983 action. *Skinner*, 131 S.Ct. at 1298-99. The Court remanded the case to the Fifth Circuit, which in turn remanded the case to the District Court. This case was then referred to the undersigned.

limitations, it appears to be moot. The CCA's 2003 decision was based upon an interpretation of article 64.03 that the Texas Legislature has stated placed too heavy of a burden on the movant. *See Smith*, 165 S.W.3d at 363-64. The legislature has since amended Article 64.03 so as to lower the burden of proof on a defendant seeking access to DNA evidence, post-conviction.

It is clear plaintiff represented to the Supreme Court in this case that he challenges article 64.01 of the Code of Criminal Procedure as the CCA construed it in its 2009 decision. Plaintiff avers it is a violation of procedural due process to prohibit everyone who could have had DNA testing prior to trial but did not, as part of reasoned trial strategy, from obtaining DNA evidence after conviction. This Court makes no comment on the validity of this argument, although the Supreme Court indicated plaintiff has "slim room . . . to show that the governing state law denies him procedural due process." *Skinner*, 131 S.Ct. at 1293.

Of more immediate concern is the fact plaintiff's challenge to the statute as construed in the 2009 decision appears to have been mooted by the passage of the 2011 amendment completely deleting the portion of the statute Skinner contends deprived him of due process. There is no longer a "no fault" provision upon which the state courts may deny DNA evidence to a convicted person. *See* Tex. Code Crim. Proc. Ann. art. 64.01. This concern is especially valid in light of the fact plaintiff is, at this very time, seeking to obtain the benefit of the new legislation in his third motion for DNA testing, which is pending in state court. In sum, the actions of the Texas Legislature in the enactment of the superseding statutes in both articles 64.01 and 64.03, which are the grounds upon which plaintiff has based his § 1983 complaint, along with plaintiff's attempt to obtain DNA evidence under the new statutes, appears to have mooted this case. *See Johnson*, 586 F.2d at 388.

This reasoning assumes, however, that the state courts will reach the merits of plaintiff's

third motion for DNA testing, as opposed to dismissing it as "successive." This assumption appears well-founded considering the fact plaintiff has already filed a second motion for access and testing of the same DNA evidence, and the CCA reviewed the second motion on the merits. *See Skinner*, 293 S.W.3d at 196. The CCA has not only reviewed the merits of Skinner's second motion for DNA evidence, but has observed, in passing, "Chapter 64 does not prohibit a second, or successive, motion for forensic DNA testing." *Ex parte Baker*, 185 S.W.3d 894, 897 (Tex. Crim. App. 2006). This language is dicta, however, and is not binding on the state courts. The Court has not found any instance where the CCA has expressly held successive article 64 motions are permissible or impermissible. Further, the statute does not address subsequent or successive motions so as to offer instruction into whether such motions are prohibited or allowed. *See* Tex. Code Crim. Proc. Ann. art. 64. Consequently, there is nothing definitive for this Court to rely on to support a finding the state court will definitely address the merits of Skinner's third motion for DNA evidence.

To be clear, assuming the state courts evaluate Skinner's third motion for DNA testing on the merits, the issues presented to this Court in Skinner's § 1983 action are moot. If, however, the state courts decline to review the motion on the merits, and instead dismiss the motion as successive, then there remains a live case or controversy in this Court. Put another way, the 2009 CCA decision plaintiff challenges in this Court provides a basis for a live case or controversy, and will continue to provide such a proper foundation for a § 1983 claim unless and until the state court rules that the amended version of article 64.01 applies to Skinner. If the state courts dismiss the third motion as successive, and refuse to apply the amended article 64.01 to Skinner, then the amended statute will not serve to moot the issues presented in Skinner's § 1983 complaint. As of this point in time, there remains a live case or controversy in this case, even though it appears likely the case or controversy

will be mooted by future state court action. The Court's jurisdiction is tied directly to future determinations of the Texas courts.

Nevertheless, the Court cannot ignore the possibility the case before it "might be mooted . . . by state court determination of pertinent state law." *See Colo. River Water Conservation Dist.*, 424 U.S. at 814, 96 S.Ct. at 1244. Even if outright dismissal of the case as moot is not warranted at this time, *Pullman* abstention is clearly warranted. First, there appear to be at least two unsettled issues of state law involved: (1) whether plaintiff may obtain review on the merits of a successive motion for DNA evidence and (2) the extent of the impact of the amended statutes on plaintiff's motions. Second, if the state court resolves these issues in favor of plaintiff, and orders production of the DNA evidence Skinner seeks, then there will be no need for this Court to adjudicate the federal constitutional issues presented in the § 1983 complaint. *See Ibarra*, 624 F.2d at 46. Consequently, both factors for *Pullman* abstention are present. *See id.* This Court does not lightly recommend the District Court should decline to exercise its jurisdiction, especially in a case where plaintiff's execution is quickly approaching and where the United States Supreme Court has held plaintiff has a right to assert his constitutional due process claims under 42 U.S.C. § 1983 within the federal court system. *Skinner*, 131 S.Ct. at 1300. The recent and post-remand developments in state law, however, mandate abstaining from further review of the case under the *Pullman* doctrine. The Court is unable to properly take further action in this case until the state court has issued a final ruling on Skinner's third motion for DNA testing.

### B. The Parties' Positions

Both parties agree mootness concerns are presented in this case, although the parties differ in their conclusion of how the Court should handle these issues. On October 24, 2011, oral

argument was held. During argument, plaintiff recognized the Texas Legislature has amended both of the DNA statutes involved in the instant § 1983 action. He acknowledged he now has a third motion for DNA testing pending in state court, which he filed as a result of the most recent amendment to article 64.01, which took effect September 1, 2011. Considering the pendency of Skinner's third motion for DNA testing in state court, counsel for Skinner agreed that evaluation by this Court of either of the earlier provisions of the statute or of the CCA's interpretation and/or application of either is likely moot. Consequently, plaintiff took the position in oral argument that *Pullman* abstention is appropriate and the Court should "stay its hand" and wait for the state court rulings before proceeding further in this case.

Defendant Switzer also agreed the amendments to the statutes at issue in this case have made the instant proceedings moot. Consequently, defendant avers, the Court has lost all of its subject matter jurisdiction over these proceedings. Defendant asks the Court to dismiss the complaint as moot.

Were the Court convinced it had definitively lost jurisdiction, it would, of course, recommend dismissal of the complaint. Conversely, were the Court convinced no grounds for abstention were present, it would proceed in reviewing, analyzing, and issuing a Report and Recommendation in the case. The *Pullman* doctrine, which allows for abstention when a case "might be moot[]," is the more appropriate, well-reasoned option. As the Supreme Court has indicated, except in extremely limited circumstances not applicable in this case, application of abstention principles "only permit a federal court to enter a stay order that *postpones* adjudication of the dispute, not to dismiss the federal suit altogether." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 719, 116 S.Ct. 1712, 1722, 135 L.Ed.2d 1 (1996) (emphasis in original); *United Gas Pipe Line*

*Co. v. Ideal Cement Co.*, 369 U.S. 134, 135-36, 82 S.Ct. 676, 677, 7 L.Ed.2d 623 (1963) ("Wise judicial administration in this case counsels that decision of the federal question be deferred until the potentially controlling state-law issue is authoritatively put to rest.").

While the procedural due process issue is a federal constitutional claim, the statutes and actions Skinner asks this Court to review are state issues. The capital murder case was prosecuted in state court. DNA evidence has consistently been sought in state court pursuant to state law. Skinner is again seeking DNA evidence pursuant to state law. The proper language and application of the Texas statutes are issues the state legislature, as recently as the 2011 session, has sought to correct and perfect. It would be intrusive to the point of impropriety for this Court to continue in this case and rule on dispositive issues until the state court has had the opportunity to review and interpret its own laws. Such action by this Court would violate the principle of comity and would be contrary to the inherent respect this Court has for the role of the state courts. Consequently, the undersigned recommends the Court abstain from exercising its jurisdiction under the *Pullman* doctrine and stay and abate the case until the state courts take final action on Skinner's pending motion for DNA testing.

Because this Court recommends abstention is abstaining at this time, it does not address the application of the *Rooker-Feldman*, claim preclusion, or res judicata doctrines nor does it speak to the merits of Skinner's denial of due process arguments. It intentionally withholds discussion of the timeliness of the § 1983 claims and of whether application of equitable tolling is appropriate.

### III.
### RECOMMENDATION

The undersigned United State Magistrate Judge recommends the District Judge STAY AND ABATE the proceedings in this case. The Clerk of the Court should be directed to

ADMINISTRATIVELY CLOSE this case until such time as the Court orders the case reopened.

Plaintiff should be instructed to advise the Court of any final actions by any state court immediately. Apart from final state court actions, plaintiff should be instructed to, within the same time period, timely advise the Court of any action by the state court which may impact the abstention issue. Within ten days of final action by the CCA, plaintiff should be directed to file a motion to lift the stay. Plaintiff's motion to lift the stay should recite the state courts's authoritative conclusion on pertinent state law issues. In the motion to lift the stay, plaintiff should specifically indicate what action he wishes the Court to take upon lifting the stay.

Plaintiff should be instructed that his failure to comply with these instructions may result in final dismissal of this case.

## IV.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Order to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 27th day of October, 2011.

_Clinton E. Averitte_
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d). **If either party wishes to file objections prior to the deadline, they are advised that the case will be considered ripe for presentation to the District Judge when the objections are filed, or when the fourteen (14) days runs, whichever occurs first. Further, the relief recommended appears to be the relief plaintiff sought at oral argument. If, in fact, the relief is what plaintiff sought, then plaintiff shall advise the Court immediately whether or not he intends to object.**

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).